Julia Epstein, individually and as administratrix of the estate of Ruby Prenowitz, deceased, complainant-appellant,

v.

Joseph Fleck, Leo Fleck and Abraham Fleck, defendants-respondents, and Etta Gothstein, Jeannette Levin, Jasper Levin, Walter Prenowitz, Felix Hurwitz, Betty Hurwitz, Etta Elfenbein, Israel Elfenbein, Evelyn Prenowitz, Donald Prenowitz, Jeane Prenowitz and Walter Epstein, third parties, defendants to counter-claim-appellants.

[Submitted October 29th, 1947. Decided February 19th, 1948.]

Mr. I. Joseph Stein (Mr. John W. Ockford, of counsel), for the complainant-appellant.

Mr. Maurice C. Brigadier and Mr. Herman Lipschilz, for the third parties, defendants to counter-claim-appellants.

*Mr. Ward Kremer,* for the defendants-respondents.

The opinion of the court was delivered by

BURLING, J.

The bill of complaint sought discovery of and an accounting by the defendants Joseph Fleck and Leo Fleck of alleged business dealings with the decedent, Ruby Prenowitz. These defendants denied they had received money payable and due to the decedent but admitted the receipt and possession of a check for $2.185.50, payable to the order of the decedent by the Loft Candy Co., which check they stood ready and willing to pay to the complainant as the personal representative of the decedent.

These defendants filed their counter-claim alleging that the decedent promised them that in consideration of the performance of certain services to be rendered by them, the decedent would devise and bequeath to them his entire estate.

The case came on for final hearing and at the conclusion of the reception of the evidence, the court determined it to be necessary for the complete disposition of the case that the brother of these defendants, Abraham Fleck, be brought in and made a party complainant to the counter-claim. The counter-claim of the defendants was accordingly amended. Since among the assets of the decedent there was real estate, the court held that to effectuate the findings of the court all necessary parties were not before the court. The decedent died intestate leaving him surviving the complainant, a niece: the remaining next of kin and heirs-at-law being nieces, nephews and representatives of a deceased nephew. The counter-claim was amended to the end that they, together with their respective husbands and wives, be brought in as third parties, defendants to the counter-claim.

Later. a further and final hearing was held after making the additional persons parties to the cause of action. The court was of the opinion (unreported) that the complainant had received the relief sought for in her bill of complaint and it was accordingly dismissed. The court was further of the opinion that the counter-claimants were entitled to the specific

performance of the alleged contract and a decree was entered accordingly with provisions to give effect thereto.

A petition of appeal was filed by the complainant only as to the determination upon the amended counter-claim and by all of the third party defendants thereto.

The grounds of appeal may be summarized and concisely stated:

1. The counter-claiming defendants did not establish by clear and convincing evidence the making of a contract by the deceased to devise and bequeath his entire estate to them by his last will and testament.

2. Since the contract was oral, the statute of frauds (*R. S. 25:1–5*) intervenes and the contract is unenforceable.

3. The evidence does not support a finding for the application of equitable principles to obviate the effect of the statute.

It is settled law in this State that a person may make a valid contract to bind himself to make a particular testamentary disposition of his property. Parol agreements of this character may be enforced by a court of equity notwithstanding the statute of frauds (*R. S. 25:1–5*) only under certain situations.

In *Cooper* v. *Colson,* a leading case upon this subject (*Court of Errors and Appeals, 1903*), *66 N. J. Eq. 328* (at *p. 330*), it was held:

"In every case, in order to take the case out of the statute on the ground of part performance, irrespective of other questions, two things are requisite. The terms of the contract must be established by the proofs to be clear, definite and unequivocal and the acts relied on as part performance must be exclusively referable to the contract."

The Vice-Chancellor determined in his memorandum there was an oral binding agreement upon the part of the decedent to leave his entire estate in the following language:

"I am convinced that there was a promise by Prenowitz to leave his entire estate to his three step-sons, in consideration of or as a reward for their services to him during his lifetime," and further:

"It is to be noted that, according to all the evidence the alleged agreement or promise by Prenowitz was made to and

for the benefit of all three step-sons. Only two, Joseph and Leo Fleck, are defendants in this suit and claimants in the counter-claim. For a complete disposition of this case it is necessary that the third step-son, Abraham Fleck, be brought in and made a party to this suit. He was present at the final hearing and testified as a witness for the counter-claimants."

A finding of fact in the lower court will not be lightly disturbed on appeal, but this rule imposes no restraint on the power of the appeal court to ascertain by full investigation and analysis of the evidence what the facts are and whether the general finding is consistent therewith. *Rain* v. *Rain* (*Court of Errors and Appeals, 1940*), *127 N. J. Eq. 328* (at *p. 331*).

We determine the evidence does not establish a clear, definite and unequivocal contract and that the acts relied upon were not exclusively referable to the alleged contract.

Favorable comment may be made of the filial relationship between the decedent and the counter-claimants as contrasted with the lack of interest of the decedent or affection for the appellants or their interest in him, but the philosophy of the approach to the determination requires that "most scrupulous care should be exercised by the courts of this class of cases and especially where one of the alleged contracting parties is dead." *Cooper* v. *Colson, supra* (at *p. 333*).

The decedent married Fanny Fleck, a widow and mother of the counter-claimants, in 1914. At the time of the marriage Mrs. Fleck had a sufficient competence to enable her to advance money to her husband to enter into business, and at that time the decedent had no fixed place of business. He was unable to read and write in English, excepting his name, and was not too familiar with the language, and so on his attempt to embark on a business career without very much experience, he needed assistance and this he received from the Fleck brothers. As the time went on he succeeded in earning a livelihood for himself and his wife and to accumulate an estate which was alleged to be approximately worth $20,000 at the time of his death. He retired from active business in 1934. His wife died in January, 1942, and he died on September 28th, 1943.

The services were rendered principally at a millinery and dress store located at 722 Cookman Avenue, in the City of Asbury Park, New Jersey. Such services were rendered on part time by Joseph and Leo, and in one portion on full time by Leo when he had no other work. The services also included the maintenance of the decedent's store accounts and the accounts at a hotel owned by the decedent known as the Asbury Inn, in Asbury Park, New Jersey. The hotel was operated during the summer season while it was owned by the decedent, part of the time under a lease to others and part of the time by Leo and his wife. The remaining items of service were related to the keeping of his bank account, income tax reports before and after retirement and service for his physical welfare during a period between the death of his wife and his death, the furnishing of an apartment in a building owned by Joseph during that period and payment of nursing and hospital services.

There seems to be no doubt that the decedent suggested as an inducement to their continued assistance that eventually the business would be theirs, but what was said was not in the nature of a clear, definite and unequivocal contract to make a will leaving his estate to the step-sons. The evidence consists of loose statements signifying nothing more than that the brothers would in all likelihood succeed to the estate and they therefore had an interest in its management and success, statements that import a *mere testamentary intention rather than a contractual obligation.*

It was to be expected that the brothers would assist in the handling of the business affairs of the decedent because their mother's interest was at stake and in the hope and expectation that they would eventually succeed to the estate.

In a careful analysis of the evidence to determine the crux, these inconsistencies to the contention of the counterclaimants are to be noted:

The decedent died September 28th, 1943. Keys to the decedent's safe deposit box were surrendered by Joseph Fleck to the administratrix promptly after his death. No mention was made to her of a contract to devise by the decedent, when the first discussion between them disclosed he had no will.

A claim under oath was filed with the administratrix of the estate on November 16th, 1943, by Joseph and Leo Fleck for payment of services rendered by them. The earliest date of allegation of rendition of services in the proof of claim and counter-claim and amended counter-claim was April 1st, 1928. In the testimony of the counter-claimants all three of them placed the alleged agreement as having been made prior to 1928, in fact by variance by each of them from 1914 to 1920.

It is highly improbable that as early as 1917 or even 1928 the wife of the decedent, who was on good terms with her husband and who had helped him financially to begin in business, would be excluded from consideration in the disposition of the decedent's estate by his contract to devise and bequeath all of his estate to his step-sons. The explanation upon this subject by the brothers is unsatisfactory.

No evidence of an attempt was shown by the decedent to make a formal last will and testament. He was informed of the necessity to do so to make an effective disposition of his estate by the witness, Solomon Reiseman, a Jewish scholar. The decedent was a man of strong willpower to the extent of obstinacy. The conversation with Reiseman respecting the disposition of his estate made no mention of a contractual obligation. His statement to him provided for $1,000 to one of the nieces, Etta Elfenbein, before expressing a desire for the brothers to have his estate.

Much stress is laid upon the alleged fact that the services were performed without compensation. It is improbable that these statements are accurate. But both Joseph and Leo had families and required support by earnings. The alleged services of Abraham were of short duration and in the counter-claimants' brief it is stated: "He really profited as a participant in the agreement with Prenowitz by the efforts of his brothers."

Joseph and Leo, who were alleged to be suffering irretrievable losses from 1917 and who were informed and educated business men, made no attempt to prevail upon the decedent to act and give effect to the agreement by making certain he executed a formal will to that effect until his last illness. They claimed they were meticulous in managing his

other affairs. This would not have constituted undue influence but it would be giving effect to a lawful agreement. It is reasonable to assume that upon his failure to do so that they would cease to render the alleged uncompensated service. Refer to the recent case of *While* v. *Risdon* (*Court of Chancery, 1947*), *140 N. J. Eq. 613,* in which case a bill was filed for the specific performance of an agreement for a particular disposition of property by last will and testament during the lifetime of the testator.

A critical examination of the evidence in the entire case creates a doubt in one's mind of the existence of a clear, definite and unequivocal contract to devise. To doubt is to deny. The counter-claimants have failed to carry the particularly required burden of proof resting upon them. This makes it unnecessary to consider the further grounds of appeal.

The decree of the Court of Chancery in so far as it affects the counter-claim is reversed, and the case is remanded with a direction to dismiss the counter-claim.

*For affirmance*—BODINE, WACHENFELD, DILL, JJ. 3.

*For reversal*—THE CHIEF-JUSTICE, DONGES, HEHER, COLIE, EASTWOOD, BURLING, WELLS, FREUND, MCLEAN, SCHETTINO, JJ. 10.