CITY OF NEWARK, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIAM YESKEL, DEFENDANT-APPELLANT.

Argued May 29, 1950—Decided June 27, 1950.

*Mr. Irving Morris* argued the cause for the appellant. *Messrs. Sidney Finkel* and *Robert Inlander,* attorneys.

*Mr. Charles Handler* argued the cause for the respondent. *Mr. Nicholas Albano,* of counsel.

The opinion of the court was delivered by

BURLING, J. This is an appeal by the defendant from a final judgment of the Superior Court, Chancery Division, Essex County, in which it was ordered and adjudged that the

defendant specifically perform an agreement with the plaintiff to purchase certain real estate. The appeal was addressed to the Superior Court, Appellate Division, but has been certified by this court on its own motion.

A tax sale certificate for the land in question, known and designated on the tax maps of the City of Newark as Block 1833, Lot 16, No. 29 Camden Street, was acquired by the plaintiff on December 28, 1943, at its own sale of the land for unpaid taxes, pursuant to the general provisions of the law relating to the sale of property for unpaid taxes. Foreclosure proceedings to bar rights of redemption were conducted by the plaintiff in compliance with the *In Rem* Tax Foreclosure Act (1948), *L.* 1948, *c.* 96 (*N. J. S. A.* 54:5–104.29 *et seq.*), and on November 5, 1948, final judgment was entered in the foreclosure proceedings in favor of the plaintiff. Subsequently, on January 25, 1949, a public sale was held by the plaintiff at which all the right, title and interest of the plaintiff in the said land was sold to the defendant, the highest bidder, for the sum of $100, subject to the acceptance of said bid by the Board of Commissioners, the governing body of the plaintiff. The bid was accepted by the Board of Commissioners by resolution adopted February 9, 1949. At the time of the sale the defendant paid $10 on account of the consideration price and agreed to pay the balance upon delivery to him by the plaintiff of a bargain and sale deed within 30 days from the date said bid was accepted by the governing body of the plaintiff. Within the time prescribed the plaintiff made the requisite tender, but the defendant sought and obtained an extension of time to complete performance. On April 12, 1949, the defendant refused to purchase the land, claiming that the *In Rem* Tax Foreclosure Act (1948), *L.* 1948, *c.* 96 (*N. J. S. A.* 54:5–104.29 *et seq.*) is unconstitutional and that the plaintiff therefore had not become vested with a marketable title to the land under the foreclosure proceedings conducted thereunder. The plaintiff thereupon on April 29, 1949, filed its complaint seeking specific performance of the agreement to purchase. The defend-

ant's answer charges that the aforementioned act is unconstitutional in that (1) it fails to provide, by service of process or by substituted service, for notice to the owner and other persons interested in the lands affected by the foreclosure; (2) it fails to provide for service of process upon infants and incompetents through guardians or other legal representatives; (3) it was here applied to the foreclosure of a tax certificate acquired by the plaintiff prior to the enactment thereof; (4) it impairs the obligation of contracts as existing between the City, as taxing authority, and the owner of the lands under foreclosure; and (5) it deprives the owner and other parties in interest of the right of redemption. By reason of the foregoing objections the defendant claims that the proceedings under the act constitute a denial of "due process" and an impairment of the obligation of a contract.

Upon the plaintiff's motion for summary judgment on the pleadings the trial court entered its judgment in favor of the plaintiff, finding the constitutional objections to be unfounded and the title to the premises to be marketable. It is from this judgment that the defendant appealed.

The primary question to be determined on this appeal is whether the notice prescribed by the act is sufficient to satisfy the requirements of due process. In order to dispose of this question it is necessary to consider the nature of the particular proceeding and the object to be accomplished by the act. The act provides for the foreclosure by municipalities of tax sale certificates held by them for the purpose of summarily barring any rights of redemption in the lands embraced in such tax sale certificates. The right of redemption of land sold for delinquent taxes is not an absolute right but is dependent upon constitutional provisions or statutory grant. In the absence of any constitutional provisions respecting the right it exists only so far as specifically provided for by statute. In *Simonton, Tax Sales in New Jersey, 2d Ed.* (1925), at *page* 84, the following cogent language appears:

"It should also be borne in mind, at the risk of otherwise reaching erroneous conclusions, that neither the right to redeem nor the right

to receive notice of redemption, is an absolute right, existing independently of statute, but occurs solely by legislative grace, which, in the absence of constitutional requirements to the contrary, it is entirely within the power of the law making body to enlarge, curtail or withhold altogether, and that while the right to receive notice can never logically occur without the concomitant right to make redemption, the latter is not necessarily, nor even ordinarily, a correlative from which the right to notice may be implied, but is usually much more extensive, and the right to notice must therefore be independently authorized."

This concept of the right of redemption was recognized by the Supreme Court of the United States, in 1879, in *Keely v. Sanders,* 99 *U. S.* 441, 25 *L. Ed.* 327 (1879), wherein it was said:

"While it may be admitted that a statutory right of redemption is to be favorably regarded, it is, nevertheless, true, that it is a statutory right exclusively, and can only be claimed in the cases and under the circumstances prescribed."

See also 54 *A. L. R.* 756, where, in a prefatory statement to an annotation of cases dealing with notice in proceedings to perfect tax titles, including notice of the tax sale and notice to redeem from the tax sale, it is said: "As will appear, the right to notice in tax proceedings is purely statutory and therefore each particular case must be referred to the statute in force at the time." It was recognized by our former Court of Errors and Appeals in *City of Paterson v. O'Neill,* 32 *N. J. Eq.* 386 (*E. & A.* 1880), wherein it was said (at *page* 389):

"* * * In the charters of Elizabeth and Trenton, drawn under review in this respect in the cases of *Campbell v. Dewick,* 5 *C. E. Gr.* 186, and *Trustees, &c., v. Trenton,* 3 *Stew.* 667, notice to the mortgagee was made necessary before his title could be divested. But such requirement is one of legislative discretion, and must be regarded merely as an additional protection for the mortgagee."

The statutes in some states provide for the barring of a redemption right by the mere passage of a specified period of time after the tax sale without any requirement on the part of the purchaser at the sale to give notice to bar or take any

further proceedings in court or elsewhere to establish his absolute title to the lands purchased at the sale. See 51 *Am. Jur.,* *Taxation, Par.* 1097, *pp.* 953, 954, and *Par.* 1116, *p.* 964. Indeed, our first statute on the subject permitted redemption after the expiration of one year from the time of sale but did not require that any notice to redeem be given. *L.* 1863, *c.* 274, *p.* 497. See *Simonton, supra.* Thus it appears that the right of redemption is such that it can be barred without any notice if the statute creating the right so provides. While the constitutionality of statutes which provide for *in rem* or summary foreclosure of delinquent tax liens on real property has been challenged on many occasions on the ground that they violate the due process clause of the State and Federal Constitutions, the courts have uniformly sustained the constitutionality of such statutes. The only expression of judicial opinion *contra,* furnished to us, appears in an advisory opinion of the Supreme Court of Maine wherein the court, pursuant to a request of the state legislature, stated that a proposed statute which provided for notice to be given by the tax officer to the owner, at the expiration of eight months and within one year after the accrual of taxes, demanding payment of said tax within 10 days after service or mailing of said notice; providing for the recording of a certificate within 10 days thereafter in the event of nonpayment; and further providing that at the expiration of 18 months after the recording of said tax lien, if the tax has not previously been paid or the tax lien redeemed, the town shall be conclusively presumed to have acquired an absolute title to the real estate described in such tax lien, was unconstitutional as it "would provide a method by which a person might be deprived of his property without due process of law." See *Opinion of the Justices,* 139 *Me.* 420, 38 *A.* 2d 561 (*Me. Sup. Ct.* 1943). No reasons were given by the court in that case as a basis for its conclusion.

The rationale of the decisions sustaining such statutes is that the speedy collection of taxes, unfraught with procedural complications, is indispensable for the support of the govern-

ment and that proceedings for the collection of taxes are *in rem* and require no personal service of notice upon the owners or lienors of the land since, once the taxes on the land are duly assessed in accordance with the requirements of due process, the owners or lienors may be presumed to know that the land will be sold for nonpayment of taxes. This philosophy has been expressed by the Supreme Court of the United States on many occasions. In *Winona & St. Peter Land Co. v. Minnesota,* 159 *U. S.* 526, 40 *L. Ed.* 247 (1895), it is said, at *p.* 251 *L. Ed.*:

"* * * Questions of this kind have been repeatedly before this court, and the rule in respect thereto often declared. That rule is that a law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the 14th Amendment to the Constitution which declares that no. state shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it either before that amount is determined or in subsequent proceedings for its collection. *McMillen v. Anderson,* 95 *U. S.* 37 (24:335) ; *Davidson v. New Orleans,* 96 *U. S.* 97 (24:616) ; *Hagar v. Reclamation Dist. No.* 108, 111 *U. S.* 701, (28:569) ; *Spencer v. Merchant,* 125 *U. S.* 345 (31:763) ; *Palmer v. McMahon,* 133. *U. S.* 660 (33:772) ; *Lent v. Tillson,* 140 *U. S.* 316 (35:419) ; *Pittsburg, C. C. & St. L. R. Co. v. Backus,* 154 *U. S.* 421 (38:1031). That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribed the court in which and the time at which the various steps in the collection proceedings shall be taken, a notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law."

In *Lehigh v. Green,* 193 *U. S.* 79, 48 *L. Ed.* 623 (1904), it is said, at *page* 627, *L. Ed.*:

"In the statute under consideration, for the purpose of collecting the public revenue, the state has provided for the enforcement of a lien by the purchaser at a tax sale, and authorized him to proceed against the land subject to the tax, to enforce the right conferred by the state. The state has a right to adopt its own method of collecting its taxes, which can only be interfered with by Federal authority when necessary for the protection of rights guaranteed by the Federal Constitution. In authorizing the proceedings to enforce the payment of the taxes upon lands sold to a purchaser at tax

sale, the state is in exercise of its sovereign power to raise revenues essential to carry on the affairs of state and the due administration of the laws. This fact should not be overlooked in determining the nature and extent of the powers to be exercised. 'The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. It involves no violation of due process of law when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them.' *Bell's Gap R. Co. v. Pennsylvania*, 134 *U. S.* 232, 239, 33 *L. Ed.* 892, 896, 10 *Sup. Ct. Rep.* 533, 535.

"In authorizing the proceedings under the statute to enforce the lien of the purchaser, who has furnished the state its revenue in reliance upon the remedy given against the land assessed, the state is as much in the exercise of its sovereign power to collect the public revenues as it is in a direct proceeding to distrain property or subject it to sale in summary proceedings.

"Nor is the remedy given in derogation of individual rights, as long recognized in proceedings *in rem*, when the 14th Amendment was adopted. The statute undertakes to proceed *in rem*, by making the land, as such, answer for the public dues. Of course, merely giving a name to an action as concerning the thing rather than personal rights in it cannot justify the procedure if in fact the property owner is deprived of his estate without due process of law. But it is to be remembered that the primary object of the statute is to reach the land which has been assessed. Of such proceedings, it is said in *Cooley on Taxation*, 2d *ed.* 527 : 'Proceedings of this nature are not usually proceedings against parties ; nor, in the case of lands or interest in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land ; and if the owners are named in the proceedings, and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing shall not be lost to them, than from any necessity that the case shall assume that form.' "

In *North Laramie Land Co. v. Hoffman*, 268 *U. S.* 276, 69 *L. Ed.* 953 (1925), it is said, at *page 957, L. Ed.:*

"All persons are charged with knowledge of the provisions of statutes, and must take note of the procedure adopted by them, and when that procedure is not unreasonable or arbitrary, there are no constitutional limitations relieving them from conforming to it. This is especially the case with respect to those statutes relating to the taxation or condemnation of land. Such statutes are universally in force and are general in their application,—facts of which the landowner must take account in providing for the management of his

property and safeguarding his interest in it. Owners of real estate may so order their affairs that they may be informed of tax or condemnation proceedings of which there is published notice, and the law may be framed in recognition of that fact. In consequence, it has been uniformly held that statutes providing for taxation or condemnation of land may adopt a procedure, summary in character, and that notice of such proceedings may be indirect, provided only that the period of notice of the initiation of proceedings and the method of giving it are reasonably adapted to the nature of the proceedings and their subject-matter, and afford to the property owner reasonable opportunity, at some stage of the proceedings, to protect his property from an arbitrary or unjust appropriation."

See also *Turpin v. Lemon,* 187 *U. S.* 51, 47 *L. Ed.* 70 (1902) ; *Ballard v. Hunter,* 204 *U. S.* 241, 51 *L. Ed.* 461 (1907) ; *Longyear v. Toolan,* 209 *U. S.* 414, 52 *L. Ed.* 859 (1908) ; *Ontario Land Co. v. Yordy,* 212 *U. S.* 152, 53 *L. Ed.* 449 (1909). Such philosophy is not inconsistent with the recent expression of the Supreme Court of the United States in *Mullane v. Central Hanover Bank,* 339 *U. S.* 306, 70 *S. Ct.* 652 (1950). That case involved the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund established under the New York Banking Law. The court decided that in such proceedings a state statute requiring that notice be given to beneficiaries solely through the medium of publication in a local newspaper was incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication depriving known persons whose whereabouts are also known of substantial property rights. The difference between a proceeding for the settlement of a trust account by a banking institution and a proceeding by a political subdivision of the state to enforce the payment of taxes which have been regularly assessed and levied is patent. The court, in the *Mullane case,* in discussing the rights of owners of tangible property within a state to notice of proceedings affecting such property, said:

"* * * When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has

abandoned it, in which case proceedings against it deprive him of nothing. *Cf. Anderson National Bank v. Luckett,* 321 *U. S.* 233; *Security Savings Bank v. California,* 263 *U. S.* 282; or that he has left some caretaker under a duty to let him know that it is being jeopardized. *Ballard v. Hunter,* 204 *U. S.* 241; *Huling v. Kawy Valley R. Co.,* 130 *U. S.* 559. As phrased long ago by Chief Justice Marshall in *The Mary* 9 *Cranch,* 126, 144, 'It is the part of common prudence for all those who have any interest in (a thing) to guard that interest by persons who are in a situation to protect it.' "

The reasoning of the Supreme Court of the United States in the foregoing cases involving the assessment and collection of taxes has been applied by various state courts where the question has been raised in comparatively recent years. In *Napier v. City of Springfield,* 304 *Mass.* 174, 23 *N. E.* 2d 157 (*Sup. Jud. Ct. Mass.* 1939), it is said (at *page* 160):

"* * * The general trend of decisions indicates that once a valid assessment of taxes and a sale for nonpayment of the same have been made, the method of foreclosure of the right to redeem lies within the legislative discretion (citing cases in various jurisdictions). Accordingly statutes regulating such foreclosures that provide for little or no notice thereof have been held constitutional, and in some instances statutes that provide for automatic foreclosure or divestiture of title by mere lapse of time have also been held constitutional (citing cases in various jurisdictions)."

See also *Gathwright v. Baltimore,* 181 *Md.* 362, 30 *A.* 2d 252, 145 *A. L. R.* 590 (*Md. C. of A.* 1943); *Pollock v. Mellott,* 41 *Del.* 361, 22 *A.* 2d 843 (1941); *City of New Rochelle v. Echo Bay Water Front Corporation,* 182 *Misc.* 176, 42 *N. Y. S.* 2d 645; affirmed by Appellate Division, 49 *N. Y. S.* 2d 673; affirmed by Court of Appeals, 294 *N. Y.* 678, 60 *N. E.* 2d 838 (1945); *certiorari* denied, 326 *U. S.* 720 (1945). See also 51 *Am. Jur., Taxation, par.* 1123, *p.* 969, and 160 *A. L. R.* 1026 *et seq.* In *Spitcaufsky v. Hatten,* 353 *Mo.* 94, 182 *S. W.* 2d 86, 160 *A. L. R.* 990 (*Mo. Sup. Ct.* 1944), it was held that a statute providing for an *in rem* foreclosure of delinquent tax liens on notice by publication addressed solely to the lands without naming personal defendants and without authorizing any personal judgment was not violative of the due process clauses of the State or Federal Constitu-

tions. In *Cota v. McDermott*, 16 *N. W.* 2d 54, 155 *A. L. R.* 1271 (*N. D. Sup. Ct.* 1944), it was said that the right of redemption from a tax sale is accorded as a matter of legislative grace and that if no notice to redeem is required by the statute, no notice need be given.

█ It must be observed that a tax proceeding is not a suit between parties but is the exercise of the sovereign's prerogative power to tax. The state is the one party; the property the other. The doctrine to be evolved from the cases is that where the owner of property is given a right to redeem by statute and has had the opportunity to contest the assessment, the extinguishment of his rights in the property, either by the tax sale itself or by subsequent proceedings, may be accomplished by a strict adherence to the enabling statute which may limit the notice to be given of the proposed action to bar the right of redemption to posting or publication or no notice other than the statute itself, and any of said forms of notice shall be sufficient to satisfy the requirements of constitutional due process both as to residents and nonresidents. See 145 *A. L. R.* 597 and cases therein cited.

An analysis of the *In Rem* Tax Foreclosure Act (1948), *L.* 1948, *c.* 96 (*N. J. S. A.* 54:5–104.29), the act presently challenged, is in order. The application of the act is limited to tax sale certificates held by municipalities and provides that:

"This act shall be liberally construed as remedial legislation to encourage the barring of rights of redemption, and is an alternate and additional remedy to any other remedy provided by law, and shall apply to certificates of tax sales heretofore or hereafter issued and held by a municipality."

The act prescribes, *inter alia*, the following: (1) the proceeding is *in rem*, *par.* 4 (*N. J. S. A.* 54:5–104.32); (2) there can be no personal decree against any person, par. 5 (*N. J. S. A.* 54:5–104.33); (3) the action cannot be instituted until after the expiration of two years from the date of the tax sale and it must appear that "no part of any general land taxes levied and assessed for the four calendar years

next preceding the date of the petition against the land covered by such certificate has been paid," par. 6 (*N. J. S. A.* 54:5–104.34) ; it is observed, at this point, that while assessments for benefits for municipal improvements are a lien on the land on which they are assessed, *R. S.* 54:5–7, to enforce the payment of which the land may be sold, *R. S.* 54:5–19, as amended *L.* 1944, *c.* 108, the *in rem* foreclosure proceedings authorized by the present act are limited to cases where "no part of any *general land taxes* levied and assessed for the four calendar years next preceding the date of the petition * * * has been paid." There is a distinction between general land taxes, which are levied for the purpose of raising general public revenue, and assessments for benefits for municipal improvements, which are levied as a means of paying in whole or in part for local improvements of a public nature. See 51 *Am. Jur., Taxation, par.* 11, *p.* 45; 48 *Am. Jur., Special or Local Assessments, par.* 1 *et seq., p.* 564 *et seq.* Thus, while the sale and subsequent foreclosure proceedings may *include* assessments for municipal improvements, the nonpayment of any part of four years general land taxes is a *sine qua non* to the institution of the proceedings under the act; hence the act cannot be resorted to where *only* assessments for municipal improvements are unpaid. (4) The municipality, by resolution, must prepare a tax foreclosure list containing, *inter alia,* a description of the premises, the amount required to redeem, and the name of the person last appearing as owner, par. 7 (*N. J. S. A.* 54:5–104.35) ; (5) a petition must be filed with the court setting forth the tax foreclosure list, the description of the lands affected, and the names of the persons who by the public records appear to be the owners, pars. 8, 9, 10 (*N. J. S. A.* 54:5–104.36, 37, 38) ; (6) a copy of the petition must be filed with the municipal tax collector, the county recording officer and the Attorney General, par. 13 (*N. J. S. A.* 54:5–104.41) ; (7) the municipality must secure, from the court, an order of publication under which a statutory form of foreclosure notice, which shall include a copy of the tax foreclosure list, must be published once in a

newspaper designated by the court and circulating in the municipality, pars. 18, 19 (*N. J. S. A.* 54:5–104.46, 47); (8) within 15 days after publication of the notice a copy thereof must be posted in the office of the tax collector, the office of the county recording officer, and in three other conspicuous places within the taxing district in which the land is located, par. 22 (*N. J. S. A.* 54:5–104.50); (9) notice may be mailed, within 15 days after publication, to each person having any title, lien, claim or interest in the land; but failure to mail such notice does not invalidate the proceedings, par. 21 (*N. J. S. A.* 54:5–104.49); (10) proof by affidavits of the requisite publication and posting is necessary to secure a final decree, par. 23 (*N. J. S. A.* 54:5–104.51); (11) any person claiming a right, title or interest in, or to, or lien upon the land may file an answer within 45 days of the date of publication of the notice, par. 24 (*N. J. S. A.* 54:5–104.52); (12) redemption shall be made at the office of the tax collector, at any time after the filing of the petition, and before final decree, par. 32 (*N. J. S. A.* 54:5–104.60); (13) the decree shall give complete relief, by barring all right of redemption and vesting an absolute and indefeasible estate of inheritance in fee simple in the lands in the petitioner, and the decree shall be binding and final upon all persons having any interest in the lands, "including the State of New Jersey, and any agency and political subdivision thereof, and their heirs, devisees and personal representatives, and their, or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest notwithstanding any infancy or incompetency of such person or persons, and upon all other persons, their heirs, devisees and personal representatives, and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest," par. 36 (*N. J. S. A.* 54:5–104.64); (14) the decree may be reopened, by publication therefor, within three months from the date of recording, upon the grounds of lack of jurisdiction or fraud in the conduct of the suit, par. 39 (*N. J. S. A* 54:5–104.67).

Thus it is observed that the statute under attack provides for notice to be given of the proceedings to bar redemption in the following manner: publication and posting are mandatory; mailing is permissive. In conjunction with the notice of the foreclosure proceedings it must be observed that our statutes relating to the initial assessment of taxes and subsequent tax sales for delinquent taxes provide for notice and an opportunity to be heard. R. S. 54:4–38 provides that each assessor, 10 days before filing the completed assessment list shall give public notice in at least one newspaper circulating within his taxing district of a time and place when and where the assessment list may be inspected by any taxpayer for the purpose of enabling the taxpayer to confer informally with the assessor respecting the assessments made against the taxpayer or his property so that errors may be corrected. R. S. 54:3–21, as amended L. 1945, c. 125, provides an opportunity for a taxpayer feeling aggrieved by the assessment against his property to appeal to the county board of taxation. R. S. 54:2–39, as amended L. 1944, c. 240, and L. 1946, c. 161, provides for an additional appeal from the judgment of the county board of taxation to the Division of Tax Appeals in the State Department of Taxation and Finance. R. S. 54:5–19, as amended L. 1944, c. 108, provides for the sale of real property when unpaid taxes or any municipal lien, or part thereof, on such property remains in arrears on July 1st in the calendar year following the calendar year when the same became in arrears. R. S. 54:5–25, as amended L. 1945, c. 232, provides that a public notice shall be given of the time and place of sale, the notice stating a description of the property, the owner's name, and the total amount due thereon. R. S. 54:5–26 provides for copies of the notice to be set up in five of the most public places in the municipality, and a copy to be published in a newspaper circulating in the municipality, once in each of the four calendar weeks preceding the calendar week containing the day appointed for the sale. R. S. 54:5–27 provides for the mailing of a copy of the notice to the owner, although failure to so mail shall not invalidate the proceeding.

█ A consideration of the notice prescribed by *L.* 1948, *c.* 96 (*N. J. S. A.* 54:5–104.29 *et seq.*) in the light of the prescribed notice and opportunities for hearing and appeal incident to the assessment of the tax, and the prescribed notices incident to the tax sale itself, result in the inescapable conclusion that the statute under attack clearly meets the requirements of constitutional due process as delineated in the numerous decisions of the Supreme Court of the United States and of the various state courts in which the question has been passed upon.

█ The next problem to be considered relates to the question of whether the challenged act is constitutional insofar as tax lien certificates created prior to its adoption are sought to be affected. Our answer is in the affirmative. In *Rodgers v. Cressman,* 98 *N. J. Eq.* 209 (*Ch.* 1925), a case which has been often cited and followed by our courts, it was decided that a statute which takes away, reduces the time for, or otherwise impairs the vested right of redemption is unconstitutional, and that the rights of a *private person* purchasing at a tax sale are governed, as to the owner's right of redemption, by the law in force at the time of the sale. See also *Harrington Co. v. Jones,* 104 *N. J. Eq.* 377 (*Ch.* 1929) ; affirmed, 106 *N. J. Eq.* 280 (*E. & A.* 1930) ; *Harrington Co. v. Chopke,* 110 *N. J. Eq.* 574 (*E. & A.* 1932). In *Nelson v. Naumowicz,* 1 *N. J.* 300 (1949), this court, citing *Rodgers v. Cressman, supra,* said that the rights and liabilities under tax sale proceedings rest upon statute and particularly as to the owner's right to redeem against *private persons* holding the tax sale certificates upon the law in force at the time of the sale. The restriction of the applicable law at the time of the tax sale to the rights of *private persons* holding the tax sale certificates was advisedly stated by the court in *Rodgers v. Cressman, supra;* the authority cited by the court for the statement in that case was 12 *C. J., Const. Law, par.* 524, *p.* 966. The same authority, however, says: "But in the case of land purchased by the state for the nonpayment of taxes, the time allowed the owner to redeem may be extended by a subsequent

statute as no vested rights of private persons are impaired. thereby." Be that as it may, it is clear that no vested right of redemption is taken away, reduced or otherwise impaired by the challenged act. The right of redemption is preserved but the remedy for the enforcement of the tax collection is changed. It has been aptly said that there is no vested right in a mode of procedure and a delinquent taxpayer has no vested right in any existing mode of tax collection. In *League v. Texas,* 184 *U. S.* 156, 46 *L. Ed.* 478 (1902), the court said:

"That a state may adopt new remedies for the collection of taxes, and apply those remedies to taxes already delinquent, without any violation of the Federal Constitution, is not a matter of doubt. A delinquent taxpayer has no vested right in an existing mode of collecting taxes. There is no contract between him and the state that the latter will not vary the mode of collection. Indeed, generally speaking, a party has no vested right in a mere matter of remedy; that is subject to legislative change. And a new remedy may be resorted to unless in some of its special provisions a constitutional right of the debtor or obligor is infringed. There is no vested right in a mode of procedure. Each succeeding legislature may establish a different one, providing only that in each are preserved the essential elements of protection.'"

See also *Cota v. McDermott, supra.* See also *Shade v. Colgate,* 3 *N. J.* 91 (1949).

 It is next contended that the act is defective because it does not provide specially for the protection of infants, the insane and others under disability who may have an interest in the lands. It is sufficient to say that notice in a tax proceeding *in rem* is notice to the whole world and, as succinctly stated in *Levy v. Newman,* 130 *N. Y.* 11, 28 *N. E.* 660 (*C. of A.* 1891), "The right to redeem lands sold to enforce the collection of taxes assessed against it is purely statutory, and statutes providing the procedure for assessing and collecting taxes, for the sale of land for their nonpayment, and for the redemption of lands sold are applicable to infants and persons under disabilities, unless they are excepted from their operation * * *." Such persons are specifically included within the operation of the challenged act. See *N. J. S. A.* 54:5–104.64.

Lastly, it is contended that tax lien foreclosure actions are to be strictly construed in favor of persons having interests in the lands. It is true that courts have a repugnance to forfeitures and consider that where notice is required to be given by a statute, the requirement is a jurisdictional *sine qua non* and the right of redemption cannot be barred unless the notice is given in strict compliance with the statute, see *Rusch v. John Duncan Land & Mining Co.*, 211 *U. S.* 526, 53 *L. Ed.* 312 (1909); *Bonded Certificate Corp. v. Widley*, 137 *N. J. Eq.* 564 (*E. & A.* 1946), but the present contention is inappropriate to this appeal because it is conceded by the defendant in his answer and on oral argument before this court that the foreclosure proceedings here involved "were conducted by the plaintiff in full compliance with the *In Rem* Tax Foreclosure Act (1948) *R. S.* 54:5–104.29."

We conclude that the challenged act does not contravene the requirements of due process guaranteed by the Federal and State Constitutions; nor does it impair the obligation of a contract in contravention of the respective constitutions.

The judgment is affirmed but without costs.

OLIPHANT, J. (dissenting). I find myself in disagreement with the majority on the fundamental issues involved in this appeal.

The action was one for specific performance to determine the validity of a title of a parcel of property purchased from the City of Newark which in turn had acquired title by foreclosure under the *In Rem* Foreclosure Act, *P. L.* 1948, *Chapter* 96. Like many actions in specific performance it is in the nature of a friendly suit, both parties desiring a judgment by this court to the effect that the title to be delivered under the contract of sale be a valid one. In such suits it is not unusual to find that the arguments as to invalidity are not pressed with the skill and perseverance found in the usual adversary proceeding, but rather only the arguments as to validity of the title are pressed and fully presented to the court. Such is the situation here.

The appellant resisted this suit on the ground the title is not marketable in that it depends upon an antecedent foreclosure by the City of the tax sale certificate under the cited statute. The brief of the appellant raised the following contentions: (1) failure to provide, by service of process or by substituted service, for notice to the owner and other persons interested in the land who by our statute have a right of redemption; (2) failure to provide for service of process upon infants and incompetents through guardians or other legal representatives; (3) that the statute has no retroactive effect and cannot apply to the foreclosure of a tax sale certificate acquired prior to the enactment of the act; (4) that it impairs the obligation of contracts as existing between the City, as the taxing authority, and the owner of the land under foreclosure; (5) that it deprives the owner and other parties in interest of the right of redemption without due process of law.

The majority opinion, and the respondent, rely on several opinions of the United States Supreme Court which I think are distinguishable, but the principal reliance is placed upon the decisions of the New York courts in construing the New York *In Rem* Foreclosure Act, and a decision of the Maryland court construing an act of somewhat similar tenor.

One casually reading the New York decisions would come to the conclusion that all doubt as to the constitutionality of the New York statute had been resolved by these decisions, but it is surprising to find that the New York Court of Appeals in 1943, in the case of *Lynbrook Gardens v. Ullmann*, 37 *N. Y. S.* 2d 671; reversed, 291 *N. Y.* 472, 53 *N. E.* 2d 353; *certiorari* denied, 322 *U. S.* 742, 64 *Sup. Ct.* 1144, 88 *L. Ed.* 1575, stated flatly that even if they were to sustain the validity of the *in rem* foreclosure proceeding the United States Supreme Court might reach a different conclusion in litigation instituted in a different forum by a subsequent purchaser, a title which depended on the validity of certain sections of the act might be held to be not marketable and that therefore a judgment of specific performance under such circumstances should not be rendered. This despite the fact that in that

case 43 different intervenors filed briefs and the constitutionality of the act *in toto* was fully and exhaustively argued.

Since I have grave doubt as to the constitutionality of this act both under the State and Federal Constitutions, I am to reverse the judgment in this case. Specific performance will not be decreed where a reasonable doubt concerning title exists though the doubt rests on debatable grounds which might visit upon the purchaser litigation, although the title might at law in the end be declared good. *Casriel v. King,* 141 *N. J. Eq.* 515 (*Ch.* 1948); *Warner v. Giron,* 141 *N. J. Eq.* 493 (*Ch.* 1948).

To doubt is to deny. *Young v. Sabol,* 4 *N. J.* 309 (1950); *Epstein v. Fleck,* 141 *N. J. Eq.* 486 (*E. & A.* 1948):

I have serious doubts as to the provisions of notice required by the *In Rem* Foreclosure Act, with respect to those who have the right of redemption under our General Tax Act. The majority opinion proceeds on the assumption that the speedy collection of taxes unfraught with procedural complications is indispensable for the support of the government and that proceedings for the collection of taxes are *in rem* and require no personal service of notice upon the owners or lienors of the land, since once the taxes on the land are duly assessed in accordance with the requirements of due process the owners or lienors may be presumed to know that the land will be sold for the non-payment of taxes. I agree it is fundamental that any owner of a piece of property is chargeable with knowledge that his property is taxed and that therefore he is chargeable with notice of the remedies by which he can test the validity of the assessment and have it reviewed. But this is a very different thing from saying that in a judicial proceeding in the nature of a strict foreclosure in a court of competent jurisdiction, the purpose of which is to cut off the statutory right of redemption and to deprive him, a necessary party, of his right, title and interest in the property, and in many instances a right of inheritance, that such a proceeding can be of a summary nature with process by mere publication, particularly where by a reasonable effort personal service could be had in the jurisdiction.

As a former Chancellor of this State it has been my experience, and the result of observation, that in tax foreclosure cases, personal service has been obtained in the past on between 50% and 65% of the named defendants who had a right of redemption under our statute. It is true that redemptions are few and far between but this does not alter the fundamental question of due process involved in this case.

The right to review an assessment and the levy under our General Tax Act is given solely to the taxpayer or record owner. *R. S.* 54:4–23; 54:4–24; 54:4–64; 54:3–21; 54:2–29. And only the owner as shown on the tax duplicate is entitled to notice of the tax sale. *R. S.* 54:5–21, 25, 27. The tax sale itself is a sale of the fee subject to *the right of redemption* and subject to this right the lien of the municipality for taxes passes to the purchaser. *R. S.* 54:5–42. Up to this point in our procedure for the collection of taxes the right of the taxpayer to seek review is before an administrative or *quasi*-judicial board. The type or character of notice in such proceeding is of an entirely different quality than that which is required by the due process clause in a judicial proceeding in a court of competent jurisdiction which is what the *In Rem* Foreclosure Act pretends to afford.

The right of redemption given by our General Tax Act is not given to the taxpayer alone. *R. S.* 54:5–54 gives the right of redemption to "the owner, mortgagee, occupant or other person having an interest in land sold for municipal liens * * *" and this right of redemption heretofore was cut off by a bill in the nature of a strict foreclosure. *R. S.* 2:29–77 *et seq.*

The *In Rem* Foreclosure Act abolishes the long existing practice of making inquiry to identify the persons in interest for the purpose of serving process. This is a radical departure from the requirements of due process long existing in this State. The argument to support its validity is one of expediency, namely the need for revenue. I do not think an owner's property may be taken away because it is in the public interest that arrears of taxes be collected promptly. It is

of the essence of due process that there be notice to the extent that it is appropriate and reasonable. Tax cases are notable exceptions but it does not seem to be sound to insist that no notice need be given where inquiry would disclose resident owners who could be served with process, and I have not found any cases in the United States Supreme Court that so hold.

The respondent relies upon *Hagar v. Reclamation District,* 111 *U. S.* 701, 4 *Sup. Ct.* 663, 28 *L. Ed.* 569; *Winona and St. Peter Land Co. v. Minnesota,* 159 *U. S.* 526, 16 *Sup. Ct.* 83, 40 *L. Ed.* 247; *Pittsburgh, Cincinnati, etc., Rwy. Co. v. Marion County, Ind.,* 154 *U. S.* 421, 14 *Sup. Ct.* 1114, 38 *L. Ed.* 1031; *North Laramie Land Co. v. Hoffman,* 268 *U. S.* 276, 45 *Sup. Ct.* 491, 69 *L. Ed.* 953; *Leigh v. Green,* 193 *U. S.* 79, 24 *Sup. Ct.* 390, 48 *L. Ed.* 623.

The first four cases relate to the right of a taxpayer to notice so that he may review the assessment and levy made under the taxing act. In short, these are assessment cases and it can be conceded that a taxpayer is charged with notice of the law under which the assessment, levy and the lien for the taxes is imposed upon his property.

In the *Hagar case* there was a sale but the case, at *page* 573, clearly indicates that personal notice is required to be given to the taxpayer prior to the sale. These cases are clearly distinguishable from the questions on notice here presented.

In *Leigh v. Green, supra,* the court said of a Nebraska statute that undertook to proceed *in rem* by making the land as such answer for public dues, that the primary object of the act was to reach the land which had been assessed and that such proceedings are not the usual proceedings against the parties, nor in the case of lands or interest in lands belonging to persons unknown can they be. They are proceedings against the lands rather than against the owners of the lands and that personal notice is required only out of tenderness. But what the court had to say must be considered in relation to what the act provided, which the court carefully pointed out when it said "the evident purpose of section 4 where the owner of the land is unknown is to permit a proceeding *in rem*

against the land itself with a provision for service as in the case of a nonresident." It then pointed out that the term "owner" as used in the fourth section of the act applies only to the owner of the fee and did not include a person holding a lien on the premises. It is clear from a reading of this opinion that the statute and proceeding in question only applied to unknown owners of the fee and thus is equally consistent with what has long been the provision of our tax statute relating to the foreclosure of the rights of "unknown" owners. *R. S.* 54:5–88, and compare our former Chancery provisions, *R. S.* 2:29–35 to 2:29–41 inclusive, and our present rules of civil procedure *Rule* 3:17–4 as amended, and *P. L.* 1948, *Chapter* 355.

I think these latter provisions are the minimal requirements of due process in this kind of proceeding. Against the interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment, but with due regard to the practicalities and peculiarities of the case. The notice must be one that can be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements having reference to the subject with which the statute deals. *Mullane v. Central Hanover Bank & Trust Co.,* —— *U. S.* ——, 70 *S. Ct.* 652, 94 *L. Ed.* ——, —— (April 24, 1950).

As I pointed out, it has been possible in the past in the larger percentage of these cases to obtain personal service on residents of this State who had a right of redemption under *R. S.* 54:5–54.

We are living in a modern day and age. Our State spends millions of dollars for the proper recordation of all instruments relating to the transfer of title and devolution of title by will or intestacy. By any reasonable effort it is possible for the attorney representing the municipality to ascertain who are the parties that have the right of redemption to the

particular parcel under foreclosure. The right of redemption having been given to them it seems essential to me that under the due process clause reasonable notice should be given to such parties who are residents in this State and to non-residents whose addresses are known or can be ascertained by a reasonable effort. As to "unknown owners" publication alone was in the past and always will be sufficient.

If the Legislature had seen fit, and it has the right, it could have abolished the equity of redemption or merely allowed the last known owner of record to redeem. It is within their competence and power to set up within our Tax Act a foreclosure by notice or a foreclosure by possession, but they have not done so.

The protection of a right of redemption is as old as the law itself, being found in the Hebraic, Roman and Civil Law. *Leviticus* XXV, *lines* 23-35; 1 *Jones on Mortgages* (*8th Ed.*), § 8; 4 *Pomeroy's Equity Juris.* (*5th Ed.*), § 1799 *et seq.* Involved in it is a right of inheritance and when a right of such stature is to be cut off by foreclosure, proper notice is a person's due, and notice which is notice in form but a gesture in fact, is not due process.

Our *In Rem* Foreclosure Act, *P. L.* 1948, *Chapter* 96, merely requires notice by publication to the last record owner shown by a 60-year search, Section 10; and notice to any person desiring to protect a right, title or interest in the described land or any parcel thereof, Section 19. No copy of the petition is required to be served on anybody, but the tax foreclosure list is published and the only description of the land set out in there is the lot and block number as shown on the tax duplicate and the book and page in the county records where the tax sale certificate is recorded. Section 7. An examination of the tax foreclosure list would not disclose to an interested party what interest, if any, he had that would make it worth his while to redeem this property, and this is peculiarly true as to tax sale certificates acquired before this act which can be foreclosed under it. Mailing of a notice to a party in interest is not mandatory, it is permissive, and

a party in interest can receive notice if he files a request for notice with the tax collector, but such a request will only be effective for five years. Sections 20 and 21. From a practical standpoint a notice which is as indefinite in form as this (which is only required to be published once in a newspaper, section 19, and even though it were required to be published for four weeks in a newspaper), is in effect no notice at all to a party entitled to notice and particularly to those other than the last record owner who have a right of redemption under *R. S.* 54:5–54.

Great reliance is placed upon New York cases construing the New York act, which is found in *McKinney's Consolidated Laws, Book* 59, §§ 165 *et seq.* But the New York act is considerably different from *P. L.* 1948, *Chapter* 96. In the New York act personal notice is mandatory to all those whose addresses are known or can be found and who have the right to redeem. Further, if an answer is filed in a New York proceeding the property goes to a public sale where it is sold to the highest bidder, in contradistinction to our act where there is no sale and on failure to redeem for the fixed amount the right of redemption is cut off. A foreclosure that goes to a sale and a foreclosure that merely cuts off the right of redemption if redemption is not made, are two separate and distinct things. *Milsch v. Owens,* 82 *N. J. Eq.* 404 (*Ch.* 1913). If a sale were had on a bill to foreclose the right of redemption the redemption, in effect would be made by the public, a mere stranger to the title. Our law does not intend to make a provision that a total stranger may deprive the purchaser at a tax sale of his right to prove his title by strict foreclosure on the one hand and usurp the owner's right to redeem by permitting the land to be bought away from him on the other hand. The right to foreclose the right to redeem is not the right to have a sale of the premises for the purpose of obtaining a money satisfaction for the amount paid by the purchaser upon acquiring the land at a tax sale.

This distinction is important because when a sale is had on foreclosure what really results is an equitable partition and

the land of the owner, as to the excess over and above the lien foreclosed, is turned into money which still remains lands and which is then partitioned for the purpose of paying other lienors and giving to the owner of the right of redemption that which is due him in place and stead of his lands. Further, once such a public sale is held there is an opportunity for the owner or lienor to protect himself. Such opportunity is not given under our *In Rem* Foreclosure Act. I clearly think the New York statute and cases are distinguishable.

Reliance is also had on the case of *Gathwright v. Baltimore,* 181 *Md.* 362, 30 *A.* 2d 252, upholding the validity of the Maryland *In Rem* Foreclosure Act. That statute and case likewise are clearly distinguishable. Under that act notice by publication is required as to nonresident and unknown owners, but as to resident parties with an interest (including a reversionary interest) personal service is required within the state. Such a requirement is lacking in our statute; therefore my doubt is grounded in the failure to require personal notice to parties having the right to redeem where personal service could be made through any reasonable inquiry or reasonable effort or diligence.

I have some difficulty in reconciling the United States Supreme Court cases relied on by the majority, and the recent decision of that court in *Mullane v. Central Hanover Bank & Trust Co., supra.* I do not think that *Anderson Nat. Bank v. Luckett,* 321 *U. S.* 233, 64 *Sup. Ct.* 599, 88 *L. Ed.* 692, 151 *A. L. R.* 824; *Security Savings Bank v. California,* 263 *U. S.* 282, 44 *Sup. Ct.* 108, 68 *L. Ed.* 301, 31 *A. L. R.* 391, are applicable because those cases proceeded on the theory that the owner of the intangible property was not completely deprived of it. In those cases the owners were unknown and could not be found and personal service could not be made. What occurred under the statutes there in question was merely a change in the depository and at any time in the future on a proper showing the owner could recapture his property. Such is not the situation here. A decree of foreclosure under our act is a final decree and vests in the plaintiff an absolute

and indefeasible estate of inheritance in fee simple in the lands therein described, which is binding and final upon all persons having a right of redemption given by our statute. Section 36.

As to infants and incompetents it is argued that where a statute such as this makes no exception with respect to them, it applies to them with equal force as if they were *sui generis*. I concede they can be charged with knowledge of their taxes, and up to the point where the lien for the taxes is impressed upon their property or their property is sold subject to their right of redemption that they may be charged by statute with knowledge of the law, even though it may be difficult to understand why in these particular instances they are suddenly considered to be *sui generis* when in fact we know they are not. Again the argument is one of expediency.

I have examined the cases relied on in the majority opinion, including *Newman v. Levy,* 130 *N. Y.* 11; *Spitcaufsky v. Hatten,* 182 *S. W.* 2d 86 (*Sup. Ct. Mo., Sept.* 5, 1944), but in these cases the action was to set aside a foreclosure for failure to appoint a guardian *ad litem* in the proceeding. In each case there was service of the notice upon the infant or incompetent. We have no such requirement in our act.

The provisions of the *In Rem* Foreclosure Act are in sharp conflict with the provisions as to notice under the rules of civil practice. *Rules* 3 :4–4; 3 :4–5; 3 :17–1; 3 :17–4 and 3 :55–2 (b), which are applicable to all foreclosure proceedings, including tax foreclosure proceedings.

I merely pose the question, which I deem it unnecessary to answer here because of my other doubts as to the constitutionality of the statute, and the question is: Do the rules of civil procedure applicable as to service of process and notice to infants and incompetents that are found in *Rules* 3 :4–4, 3 :4–5, 3 :17–1, 3 :17–4 and 3 :55–2 (b) which are applicable to a foreclosure proceeding, including tax foreclosure proceedings, supersede the provisions of *P. L.* 1948, *Chapter* 96 which was enacted prior to the promulgation of these rules by the Supreme Court? This question will have to be answered when the question is directly raised.

Since the statute makes a material change in the type of notice to be given to a mortgagee and since the right of redemption for taxes became a part of his contract on the mortgage, this material change in his remedy of redemption may amount to an impairment of his obligation of contract. *Lapp v. Belvedere,* 116 *N. J. L.* 563 (*E. & A.* 1936), and the cases cited there. *Cf. Wood v. Lovett,* 313 *U. S.* 362, 61 *Sup. Ct.* 983, 85 *L. Ed.* 1404.

I consider the statute unconstitutional in its provisions as to notice relative to resident and nonresident defendants who have the right of redemption and whose names and addresses could be ascertained by a reasonable effort. I likewise consider it unconstitutional in its failure to require notice to infants and incompetents so that they may have an opportunity to be represented by guardians *ad litem* under the applicable rules of civil procedure.

True, the Legislature has the sole power to establish the methods for the levy and collection of taxes. It is one thing to assess, levy, and to impress a lien for taxes on the property; it is a wholly different thing to deprive a person of a right of property for failure to pay his taxes. If the Legislature can do it for four years as to "general land taxes," it can do it for one year's taxes.

The exercise of the taxing power is a severe exercise of the power of absolute sovereignty on behalf of the State and to divest ownership without personal notice and without direct compensation out of the excess value is the instance where constitutional government approaches most nearly to an unrestrained tyranny. Redemption is the last chance of a citizen to recover his property. *Cooley on Taxation* (*4th Ed.*), §§ 1562, 1567, 1568.

I would therefore reverse the judgment.

I am requested by Mr. Justice Heher to state he concurs in this dissent.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, BURLING and ACKERSON—4.

*For reversal*—Justices HEHER and OLIPHANT—2.