LOUIS POTTOCK *v.* EMMA MELLOTT and ELWOOD MELLOTT.

*(November* 19, 1941.)

LAYTON, C. J., RICHARDS, RODNEY, SPEAKMAN and TERRY, J. J., sitting.

*Herman Cohen* for plaintiff.

*David F. Anderson* (of Southerland, Berl, Potter and Leahy) for defendants.

Court in Banc, on certification by the Superior Court for New Castle County, on a stipulation of facts.

LAYTON, Chief Justice:

The plaintiff agreed in writing to purchase from the defendants a lot of land in Wilmington, Delaware, if the title thereto should prove to be valid and free of all liens, encumbrances and defects; and, pursuant to the terms of the agreement, paid to them the sum of $100.00 on account of the purchase price. As a result of a title search the plaintiff was advised that the defendants had no title to the property. He demanded the return of the amount of the deposit and, upon the defendant's refusal, sued for its recovery.

On January 28, 1899, the property was conveyed to Charlotte F. H. Martin; and the deed records of the County show no conveyance of the property by her. The defendants assert title through a Sheriff's sale for City and School taxes due the City of Wilmington for the years 1931 to 1934 made under the authority of Chapter 143, Volume 36, Delaware Laws, and known as the Monition Tax Statute.

It is not claimed that the taxes were not validly assessed, nor that an actual delinquency did not exist.

The plaintiff contends that the statute is violative of due process of law under the Federal and State Constitutions, U. S. Const. Amend. Art XIV; Delaware Const. Art. 1, Sec. 7 for the following reasons: (1) that it permits judgment to be rendered against a taxable upon the exparte application of the taxing authority without notice or hearing; (2) that no distniction is made between a resident, non-resident and unknown owner in the service of notice in the proceedings following the entry of judgment; (3) that it permits notice by the mere posting of a monition on the property; (4) that the length of time between the return of the Sheriff with respect to the posting of the monition and the issuance of the writ of venditioni exponas is too short a time; (5) that it permits a sale against a person in whose name the property is assessed, even though the person is not the owner; (6) that it discharges the property from dower and curtesy rights; and (7) that it permits a sale by an inadequate description.

The Monition Tax Statute must be read and understood in connection with the assessment act applicable to the *City of Wilmington, Ch.* 121, *Vol.* 28, as amended by *Ch.* 142, *Vol.* 36, *Del. Laws.* By Section 8 of that Act it was provided that all assessments upon real estate shall be so made as to show separately the value of the ground, im-

provements if any, and the total valuation of the property assessed, described with such particularity as will enable it to be clearly identified, and giving the name of the owner, or last owner or reputed owner, if known; and the section proceeds to declare that "Such name will be regarded as an aid to identify such property, but a mistake in the name of the owner, last known owner or reputed owner, or the absence of name, shall not affect the validity of the assessment of any tax based thereon."

By Section 10, the Board of Assessment was required to prepare tax maps covering the entire area of the municipal territory, that is to say, "an individual block and lot map for each square, triangle or tract into which the municipality is divided," each map to show the "outline and the dimensions of the square or triangle or tract which it represents" on a certain scale, and "the outline of the lots or sub-divisions thereof, as fixed by the then existing titles of the owners of such lot of [or] sub-division, and the dimensions of each lot or other sub-division."

The Board is required to establish a "unit value" for the City fronts of each square, and thereupon to fix the value of the ground alone of each lot or sub-division. The value of buildings and improvements are separately determined.

By Section 13, the Board is required to keep an official printed or written record of the facts appearing on each block and lot tax map, and such other information as may be necessary to enable adequate assessment to be made, the record to "show the name of the owner, the number of the lot assessed to him, and the dimension thereof, the value of the ground, and the value of the buildings and improvements, if any."

By Section 14, the Board is required to complete the

assessment on or before the fifteenth day of March in each year; and thereupon to place it on file in the office of the Board, and to give public notice, by advertisements printed in two newspapers, continued until the time for the sitting of the Board to hear appeals, and posted in the most public places in the City, that the assessment, being completed, is ready for public inspection, and designating the time fixed by the Act for the sitting of the Board to hear appeals. It is also provided that during the period provided for public inspection of the assessment, the Board shall keep some person in its office during regular office hours to aid persons assessed in ascertaining the amount of their assessments.

By Section 15, as amended by Sec. 2, Ch. 142, Vol. 36, Del. Laws, the Board of Assessment hears and determines all appeals respecting the assessments; and for this purpose it is required to sit at its office, or some other public and convenient place in the City, on each secular day from the first to the fifteenth day of April, inclusive, in each year, from 9 A. M. to 12 Noon, from 2 P. M. to 4 P. M., and from 7 P. M. to 9 P.M., and at such other times as the Board may deem necessary for the purpose of hearing appeals.

The Monition Tax Statute provides a method for the collection of taxes and special assessments in addition to all existing methods. The City may file a praecipe in the office of the Prothontary of the Superior Court for New Castle County, containing the name of the person against whom the tax sought to be collected was assessed, a copy of the bills showing the amount of taxes due and the property against which the assessment was laid, and a statement of the index number of the property as it appears on the City's assessment rolls; and this is declared to be a sufficient identification and description of the property. Thereupon, the Prothonotary is required to make a record in a special judgment docket of the Superior Court against the property as

mentioned or described in the praecipe, the record to contain the name of the person in whose name the assessment was made, the index number of the property as it appears on the assessment rolls, the year or years for which the taxes are due, the date of the filing of the praecipe and the amount of the judgment as set forth in the praecipe. Thereafter, upon praecipe therefor, a monition is issued by the Prothonotary to the Sheriff of the County briefly stating the amount of the judgment for the taxes due and the years thereof, "together with a brief description of the property upon which said taxes or assessments are a lien and a description of such property by street and number or by the index number appearing upon the assessment roll of the said City shall be a sufficient description." The statute provides the substantial form of the monition, and it is to be noted that the form requires both the index number of the assessment and a description of the property to be stated. The Sheriff is required to post the monition, or copy, upon some prominent place or part of the property, and to make return of his proceedings under the monition to the Prothonotary within ten days after the posting, which posting is declared to constitute notice to the owner or owners and all persons having any interest in the property. After the expiration of twenty days next following the return of the Sheriff, unless the judgment and costs shall be paid, on application of the City a writ of Venditioni Exponas issues directed to the Sheriff commanding him to sell the property mentioned or described in the writ and to make return of his proceedings "in the same manner as is now applicable with respect to similar writs of Venditioni Exponas issued out of the said Superior Court." It is expressly declared that the description of the property contained in the monition shall be a sufficient description of the real estate to be sold under the writ.

By Section 2 of the Act it is provided that "Any real estate or interest therein sold under the provisions hereof shall vest in the purchaser all the right, title and interest of the person in whose name said property was assessed, and/or all right, title and interest of the person or persons who are the owners thereof, and likewise freed and discharged from any dower or courtesy [sic] or statutory right, in the nature of a dower or courtesy, whether absolute or inchoate, in or to said real estate."

Upon the return of the proceedings under the writ, the Superior Court may inquire into their regularity, and either approve the sale or set it aside.

Provision is made for the redemption of property sold at any time within one year from the day the sale is approved by the Court. When not redeemed, the Court, on petition, directs the Sheriff then in office to execute and deliver a deed to the purchaser, and it is declared that a description of the property by the index number together with a description made from the tax map of the City shall be a sufficient description.

In the instant case, the descriptive language in the monition was, "E. S. Madison St., bet. W. 31st & W. 32nd (17680) Wilmington, Delaware"; in the writ of venditioni exponas, the description was, "E. S. Madison St. between W. 31st & W. 32nd Sts."; and in the newspaper advertisement under the writ of venditioni exponas the description was "(1019 Index N. 17680-E. S. Madison bet. 31st & 32nd N. E. cor. Madison St. & W. 31st St. (30' X 100') Charlotte T. Martin."

There is a tacit condition annexed to the ownership of property that it shall contribute to the public revenue in such manner and proportion as the legislative will shall direct. Land need not be assessed to any particular

person unless the statute requires it, and the Legislature has authority to provide that property shall be assessed without any reference to the name of the owner. 3 *Cooley, Taxation,* § 1095; *Del Castillo v. McConnico,* 168 *U. S.* 674, 18 *S. Ct.* 229, 42 *L. Ed.* 622; *Witherspoon v. Duncan,* 4 *Wall.* 210, 217, 18 *L. Ed.* 339. Under the assessment statute applicable to the City of Wilmington it is manifest that the tax is assessed against the land, the name of the owner, last owner, or reputed owner, being expressly declared to be only an aid in the identification of the property. The power to tax implies the power to enforce the collection of the tax, and necessarily the State in its sovereign capacity may prescribe the manner of collection; and may or may not make use of judicial tribunals, forms and processes, as seems most convenient and advantageous. So the Legislature may authorize tax sales of land without a previous judgment or decree ordering the sale, unless restrained by the constitution. 3 Cooley, Txation, § 1381, 1400. The special proceeding provided by the statute for the collection of taxes due the City is a proceeding strictly in rem, and it is in this connection that the word "judgment" must be understood. The use of the word does not necessarily connote an adversary action with the usual incidents of process and service; and it was not used in the statute in the sense of a final determination by a court of competent jurisdiction of the rights of parties in an action or proceeding. As employed it was as an apt, legalistic term for the record to be made up by the Prothonotary as the basis of a selling writ; and whether the statute is in conflict with due process of law does not depend upon the fortuitous use of the word "judgment," but upon the general scheme of taxation.

Very summary proceedings for the collection of governmental revenues have been allowed in every age and country, and necessarily so, for the very existence of

government may depend on their prompt and regular collection. The demands of the State are constant, implacable and preeminent. The usual course of judicial procedure has never been regarded as essential; and the Legislature may, within the limitations of constitutional principles, choose its own method of collecting public revenues. Summary proceedings are not necessarily unjust nor objectionable to the requirements of due process of law for administrative processes of immemorial existence are just as much due process of law as are judicial processes.

▆▆▆▆▆▆ It is a matter of common knowledge, however, that tax assessors act largely on imperfect and unsatisfactory information. Danger of error, oppression or other injustice is always present. Tax proceedings are not strictly judicial in character, but they are quasi-judicial, and have the effect, if not the characteristics of a judgement. It is essential, therefore, that the person assessed with a tax shall have an adequate opportunity, under the law, to be heard before the demand against him has been conclusively established; and it may be accepted as a fixed principle that in matters of taxation due process of law requires notice and an opportunity to be heard at some stage of the proceeding before the assessment or the amount of it has been finally concluded. The notice may, of course, be particular and individual. But this is not essential, for it may be a general notice, and all that is required is that it is reasonably certain to come to the attention of the individual. A general law which itself fixes the time and place of the sitting of the assessment officers and of which every property owner must take notice is the method commonly employed for giving information to owners of property liable to assessment, and is, perhaps, the best method. Due process of law does not require such notice and opportunity for hearing as are considered essential to the

validity of proceedings and judgments of ordinary judicial tribunals; and where provision is made for the correction of errors through boards of revision or appeals, sitting at times and places fixed by law, to hear complaints with respect to the justice of assessments, no more is required in the way of notice and an opportunity to be heard. 3 *Cooley, Taxation,* § 1114, 1118; *Hagar v. Reclamation District,* 111 *U. S.* 701, 4 *S. Ct.* 663, 28 *L. Ed.* 569; *King v. Mullins,* 171 *U. S.* 404, 18 *S. Ct.* 925, 43 *L. Ed.* 214; *Winona & St. P. Land Co. v. Minnesota,* 159 *U. S.* 526, 16 *S. Ct.* 83, 40 *L. Ed.* 247; *Longyear v. Toolan,* 209 *U. S.* 414, 28 *S. Ct.* 506, 52 *L. Ed.* 859.

The contention that the statute is unconstitutional for the reason that no distinction is made between resident, non-resident and unknown owners in the proceedings following the entry of the judgment is not readily understandable from the standpoint of due process of law. The monition or warning, it is true, is required to be posted on the premises and no more is required although the delinquent may live in the City. But general notice and opportunity to be heard with respect to the assessment of the tax are provided by the assessment statute. The taxes are imposed each year at stated times and places fixed by the law. Every owner of land knows that if the public officers perform their duty, his land will be assessed and taxed each year; and he knows also when, where, and by whom each step in the tax proceeding is to be taken, and where the public record of each step can be found. He is not, therefore, dependent upon the service of actual notice for information that his land has been taxed, and that it will be sold for taxes if they are not paid. *Black v. Banks,* 327 *Mo.* 341, 37 *S. W.* 2d 594, cited by the plaintiff, is not in point. There the Court was concerned with an action at law to recover taxes against one actually a resident but who er-

roneously was sued as a non-resident and notified of the action by constructive service of process. The observations of the Court were apt and proper in the circumstances. Here the concern is, not with a suit for taxes, for that is not the system provided, but with a delinquent tax property assessed under the safeguards of due process, the entry of what the statute terms a judgment, and the issuance and posting of a monition on the property. Whether the Legislature acted wisely in providing for a mere posting of the monition on the premises, without more, as a further means of giving notice to the owner and public generally that the property would be sold for taxes in arrear, is not the concern of the Court. It may well be that, because of the destructive agency of the weather or of human hands, the posted notice will soon become illegible or will be destroyed or removed, and that the mere posting of the notice affords small probability that actual notice of the proceeding will be brought home to the owner or other interested persons. Such an argument, while a very proper one to be addressed to the Legislature, has no place here. The process for the collection of taxes need not be founded on a judgment. It may issue without a judgment, and the assessment of ministerial officers may be made to operate as an execution against the citizen. *Harris v. Wood,* 6 *T. B. Mon. (Ky.)* 641; *Doe v. Deavors,* 11 *Ga.* 79. It follows that if no provision whatever had been made for the posting of a monition, the essentials of due process would nevertheless have been provided by the statute. The same may be said of the length of time required to elapse between the return of the Sheriff evidencing that the monition has been posted and the issuance of the selling writ. The plaintiff, on the general principles of fairness, urges that the time, twenty days, is too short. Personal opinion in such matter may well differ; but the question is one of constitutional right,

and the length of time prescribed is clearly no invasion of such right.

It may be assumed that by the words "dower" and "curtesy" are meant those estates in land arising out of the marital relation at common law. The term "statutory right," used in connection with the words, needs no explanation. The statute expressly declares that the sale of real property for taxes shall vest in the purchaser all the right, title and interest not only of the person actually assessed but also of the owner in fact, and that the sale shall discharge the property from any dower, curtesy or statutory right in the nature of dower or curtesy, whether absolute or inchoate. We are not confronted with general words of uncertain meaning and scope. The language is definite, particular and comprehensive. No construction is needed, nor is construction allowed. The assessment of the tax is against the land. The tax proceeding is one strictly in rem. The effect of the proceeding is definitely declared. The sale operates on the land itself and not merely on the title of the person in whose name it may have been listed for taxation. The law itself is notice to the world of the liability of the land for the taxes, and any person claiming an interest in the land is bound at his peril to protect his interest against forfeiture or sale by paying the tax. If he neglects his duty, his title becomes extinct, and a new and independent title becomes vested in the purchaser, freed from all prior liens, encumbrances upon the former estate, and, indeed, of every interest carved out of the old fee. The fee of the land passes, and not the interest simply of the former owner. The effect of the tax deed is to destroy all prior interests in the estate, whether vested or contingent, executed or executory, and those in possession, reversion and remainder. 3 *Cooley, Taxation,* § 1490, 1492; *Blackwell, Tax Titles,* 630; *Jones v. Devore,* 8 *Ohio*

St. 430; *Lucas v. Purdy*, 142 *Iowa* 359, 120 *N. W.* 1063, 24 *L. R. A.* (*N. S.*) 1294, 19 *Ann. Cas.* 974; *Note*, 75 *A. L. R.* 416.

The last contention of the plaintiff is that the statute is unconstitutional for the reason that it permits a sale of property by a description consisting only of the index number as it appears on the assessment rolls. This is not, however, an accurate statement of the law. The statute, in terms, is silent as to the method to be pursued by the Sheriff in advertising the property for sale, or the manner of describing it in the advertisements. Clearly it was not the intent of the Legislature to leave such important matters to the uncontrolled discretion of the Sheriff; and, accordingly, the statute provides for a writ of venditioni commanding the Sheriff to sell the property mentioned or described in the writ, and, to make return of his proceedings thereunder in the same manner as he is required to do under similar writs of venditioni exponas issued out of this Court. The statute, very plainly, points to the Sheriff's authority and duty under the general law. By Section 4819 of the Code a Sheriff is required to give public notice of the sale of lands under execution process by advertisements posted as directed by the statute, and by advertisements published for two weeks prior to the sale in two newspapers of the County in which the property is situated. It is expressly provided that it shall not be necessary to describe the property by metes and bounds, or courses and distances, nor in any case to follow the description of the property in the writ of execution under which it is sold; but it shall be sufficient if the property shall be described in such manner that it may be readily identified. This is a specific duty imposed, and the Sheriff in the instant matter very properly regarded the general statute as applicable to the advertisement of sales of land

for taxes due the City of Wilmington under the Monition Tax Statute. He did not follow the description of the property as it appeared in the writ, but with such amplitude and certainty that it might be readily identified, not as a matter of discretion but in accordance with the plain command of the statute.

The plaintiff's argument in this regard, generally speaking, falls for the reason that it ignores the plain fact that the property was in all respects validly assessed. Admittedly, a sufficient description of property is necessary before there can be a valid tax. This is necessary both for the benefit of the owner and for the establishment of future titles in case of a tax sale. Falsity of description affects all subsequent proceedings, for the description of the property on the assessment roll must be sufficiently certain to enable the owner to identify the property, and to inform possible purchasers in the event that the property is sold for taxes. Here there is no uncertainty of description in the assessment. Urban real estate is commonly described by street and number only and by reference to recorded plots. The statement of the index number of the property in the praecipe, judgment and monition, together with the street and block, allowed no chance of error and was sufficient for the particular statutory steps in the proceedings.

The tax deed and the proceedings on which it was based were valid. The title conveyed was not merely the title of the person in whose name the property was assessed, but a new and paramount title in fee simple created by an independent grant from the State, freed of all prior titles, interests and encumbrances including the right of curtesy or statutory right in the nature thereof, initiate or consummate.

It follows that the judgment must be for the defendant.