**L. C. COLLINS and Lucille Collins, his wife; Earl Schneider and Mildred Schneider, his wife; Vollie L. Woodward and Lela E. Woodward, his wife; Leo R. Marlatt; and Lewis C. Marlatt, Appellants,**

**v.**

**The CITY OF WICHITA, KANSAS, a municipal corporation, Appellee.**

**No. 5140.**

United States Court of Appeals
Tenth Circuit.

Aug. 4, 1955.

Rehearing Denied Aug. 30, 1955.

Certiorari Denied Nov. 7, 1955.

See 76 S.Ct. 140.

---

Kenneth G. Speir, Newton, Kan. (Vernon A. Stroberg and Herbert H. Sizemore, Newton, Kan., were with him on the brief), for appellants.

Robert B. Morton, Wichita, Kan. (Fred W. Aley and Lawrence E. Curfman, Wichita, Kan., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This was a suit commenced in the United States District Court for the District of Kansas for a declaratory judgment declaring null and void a condemnation proceeding by the City of Wichita, Kansas, seeking to condemn a right of way for a water line across appellants' land to bring water to the city limits. The ground on which Federal jurisdiction was invoked was that the condemnation proceedings and the statutes under which they were brought violated the due process clause of the Fourteenth Amendment to the United States Constitution.[1] A motion was filed by the city to dismiss. The parties agreed that it should be treated as a motion for a summary judgment. After a hearing, the trial court sustained the motion and entered a summary judgment dismissing appellants' cause of action.

The record shows that on September 7, 1954, the City of Wichita began a series of steps necessary under Kansas Statutes[2] to condemn this right of way by enacting Ordinance No. 20–386 describing the lands to be taken. This ordinance was published the following evening in the Wichita Eagle, the official city paper and a daily newspaper of general circulation throughout Sedgwick County, of which county Wichita is the county seat. The following day the condemnation action was begun by the city in the District Court of Sedgwick County, Kansas, to take, among other parcels, the lands of the plaintiffs herein involved. As required by statute, the district judge appointed appraisers who caused to be published in the Wichita Eagle on September 16, 1954, a notice addressed to plaintiffs that their lands were being condemned. The lands to be taken were described therein as were the reason and the extent of taking, as follows: "for the purpose of laying, installing, maintaining and operating pipes, lines, mains, electric transmission control and communication circuits and other appurtenances necessary for the construction, extension and improvement of the water supply and water works system of the City of Wichita, Kansas, for the purpose of supplying said city and its environs and inhabitants thereof with water." The notice informed plaintiffs that appraisers were to meet at the City Building in Wichita on September 27, 1954, at 10:30 A.M. to assess the damages to be awarded.

The report of the commissioners was filed on September 28, 1954, and thereafter confirmed by the district court. Title and the right of exclusive possession to the easements and rights of way condemned were vested in the city and the damages approved by the appraisers were made available to landowners as provided by state law.

While numerous assignments of error are urged for reversal, they fall generally into three classes and they will be so treated. They are: (1) the condemnation statutes and notice thereunder given to appellants were unconstitutional and void for lack of due process; (2) the condemnation ordinance was illegal because the pipeline right of way condemned was in reality for the private benefit of the Wichita Water Company rather than for an authorized public purpose; and (3) the petition in condemnation was so lacking in definiteness and certainty that the condemnation proceedings were, therefore, rendered void.

The most serious question in the case relates to the adequacy of the notice. One whose property is sought to be taken from him under the power of eminent domain is entitled to notice and to a hearing with respect to the value of the property sought to be so taken. Failure to give adequate notice would render such a proceeding void and constitute lack of due process under the Fourteenth Amendment.[3] Appellants complain that they were not personally served with no-

1. 28 U.S.C.A. § 1331.

2. Gen.Stat.1949, §§ 26–201 to 205.

3. See Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 313–314, 70 S.Ct. 652, 94 L.Ed. 865; North Lara-mie Land Co. v. Hoffman, 1925, 268 U.S. 276, 283–284, 45 S.Ct. 491, 69 L.Ed. 953; Huling v. Kaw Valley Railway & Improvement Co., 1889, 130 U.S. 559, 9 S. Ct. 603, 32 L.Ed. 1045.

tice of the meeting of the board of appraisers for the purpose of fixing damages. We are, however, of the view that they were not entitled to such notice and that adequate publication notice would be sufficient. While there is some authority to the contrary, the great weight of authority supports the proposition that a condemnation proceeding is a proceeding in rem and that constructive notice meets the requirement of due process.[4]

But appellants contend that in any event the statute under which this notice was given and the notice actually given thereunder are both void. G.S. 1949, § 26–202, relating to the condemnation of property within a city, provides that at least ten days' notice of the time and place where damages will be assessed shall be given in writing or "by one publication in the official city paper." It is clear from the record that the notice was given pursuant to this statute. The order of the district court directed that notice be given in the official city paper. Appellants argue that notice in the official city paper of condemnation with respect to the property lying outside the city is no notice. They argue that under such a law one who owns property in a number of counties lying outside the city limits would have no notice unless he subscribed to all of the official city papers in those counties. This argument is not without substance, and were Section 26–202 the only provision dealing with notice in condemnation of property outside a city a grave question might arise as to the sufficiency of such notice or the validity of such statute.

The provision which gives a city power to condemn property either within or without the city limits is G.S.1949, § 13–1209. Section 26–202 merely sets out the procedure to be followed in condemning property within the city limits. With respect to the procedure to be followed for condemning property outside the city limits we look to Section 26–208 which provides that, "Where the governing body of any city, or any other board or commission of such city, is authorized to condemn land outside the city limits for the use of such city * * *, the same proceedings shall be had as though such land were located within such city, *so far as the procedure relating to cities shall be applicable.*"[5]

So far as we have been able to ascertain Section 26–208 has never been considered by the Supreme Court of Kansas with respect to what form of notice must be given thereunder. It seems clear to us that generally it requires city condemnation proceedings with respect to property outside the city to be carried on under the general provisions of the law relating to condemnation of property within the city. Thus, for the necessity of a city resolution finding a public need, the passage and publication of an ordinance, and the application to the district court for the appointment of appraisers, we must look to the statute relating to the condemnation of property within the city. In fact, only there can we find the procedural steps to be taken. But it also seems clear to us that the statute recognizes that in some respects the procedure relating to condemnations within the city may not be appropriate to condemnation of property outside the city. If that were not so, why was the phrase "so far as the procedure relating to cities shall be applicable" added? If every step must be taken under the regular city condemnation statute, then this phrase would be useless, meaningless and would add nothing to the statute.

Giving of notice in the official city paper with respect to property outside the city limits would seem one of the steps to which the regular condemnation procedure governing cities would not be applicable. In fact, that is the main argument urged by appellants for reversal.

---

4. See 29 C.J.S., Eminent Domain, § 245 (b), p. 1217; 20 C.J. p. 938 § 349; State of Georgia v. Chattanooga, 1924, 264 U. S. 472, 483, 44 S.Ct. 369, 68 L.Ed. 796.

5. Emphasis supplied.

**136**

It must be assumed that the statute authorizing cities to condemn property outside cities contemplates that all steps essential to a valid condemnation must be taken and, since the regular statute for cities with respect to notice would be inadequate, the legislature must have contemplated that an adequate notice would be given. We then look to the general statutory provisions for the condemnation of property generally. G.S. 1949, § 26–101 of the General Condemnation Statute, with respect to notice provides, "The appraisers so appointed shall give any owner, and all lienholders of record, of the property sought to be taken, at least ten days' notice in writing of the time and place, when and where the damages will be assessed and *by one publication in a newspaper of general circulation in the county where such property is situated.*" [6]

It is our view that with respect to notice Section 26–208 contemplates that when property outside the city is being condemned notice must be given in a paper in general circulation in the county in which the property is located. This view is strengthened by the enactment of Chapter 213 of the Session Laws of 1955 in which Section 26–202 was amended by specifically providing that notice with respect to condemnation of property lying outside the city should be given in a paper of general circulation in the county where the land is situated. While no legislative history is available, it is not unreasonable to assume that the legislature by this amendment intended to clarify the statutory provision with respect to notice for the condemnation of land outside the city.

■ The notice given in this case met the test of Section 26–208 because the Wichita Eagle in addition to being the official city paper of the City of Wichita also is a paper of general circulation throughout Sedgwick County, where appellants' land is located. The fact that the parties thought they were giving the notice pursuant to Section 26–202 is immaterial. What they actually did is the important thing. They gave the notice in a paper of general circulation in the county and such notice was adequate.

■ The remaining question regarding notice is whether a ten day notice is adequate. The only requirement with respect to the length of notice is that it must be reasonable.[7] Not many cases have considered a ten day notice. Those that have, have held it to be adequate notice.[8] In Walker v. *City of Hutchinson*, 178 Kan. 236, 284 P.2d 1073, involving condemnation of land within the City of Hutchinson, the Kansas Supreme Court upheld the ten day publication notice. In addition to the ten day notice of the appraisers' meeting, the landowner has an additional thirty days to apply for relief from the appraisement. It is our conclusion that the ten day publication notice is adequate and meets the requirement of due process.

■ It is next contended that the taking of appellants' land was not for a public use. This contention centers around the relationship between the City of Wichita and the Wichita Water Company, a private utility, which owns the distribution system within the city and actually distributes and sells the water. Appellants' contention is that because of the contract between the city and the water company with respect to the water to be conducted through this pipeline, providing that the city should conduct the water to the city's gate, and there deliver it to the water company to be distributed by it to the water users, the taking amounted to a condemnation for the benefit of a private corporation. This precise question was presented and de-

6. Emphasis supplied.

7. North Laramie Land Co. v. Hoffman, 1925, 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953.

8. See Winnebago Furniture Manufacturing Company v. Wisconsin Midland Railroad Company, 1892, 81 Wis. 389, 51 N.W. 576; Pottock v. Mellott, 1941, 2 Terry 361, 41 Del. 361, 22 A.2d 843; Tilton v. Decker, 1916, 171 Cal. 731, 154 P. 860.

cided against appellants' contention in State ex rel. Brown v. Hedrick, 178 Kan. 135, 283 P.2d 437. While that case is not res judicata because the parties are not the same, we think it correctly decided the issue and it expresses our views. The court there dealt at length and in great detail with the precise question and reference is made to the opinion of the court in support of our own conclusions. We think the taking was for a public use, namely, to make provision for the distribution of water to the city and its environs. The method adopted by the city for the accomplishment of this purpose when it reached the city limits did not affect the nature of the taking.

Finally, it is contended that the description of the estate in appellants' land which was to be taken is inadequate. It is well settled that a landowner is entitled to just compensation for his land. That is the universal law and requires no citation of authorities. Certainly a factor in the determination of the compensation to be awarded is an adequate description of the estate to be taken and the use to which the land is to be put. In support of their contention that the description is inadequate, appellants quote from the city's answer in the state court action admitting that while the city planned to lay a 66 inch pipeline under appellants' land the construction plans were not and could not finally be determined at the time of the condemnation action. We are of the view that the description, however, is adequate. Obviously, every detail could not be set out. But the taking was described as "for the purpose of laying, installing, maintaining and operating pipes, lines, mains, electric transmission control and communication circuits and other appurtenances necessary for the construction, extension and improvement of the water supply and water works system of the City of Wichita, Kansas." That description with the surrounding circumstances leaves no uncertainty as to the estate to be taken.

Affirmed.