**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: September 26, 2019
Draft Report: September 13, 2019
Date Submitted: June 19, 2019

Donald L. Gouge, Jr., Esquire
Donald L. Gouge, Jr., LLC
800 King Street, Suite 303
Wilmington, DE 19899

*via FSX & 1ˢᵗ Class Mail*
Ms. Violease D. Pratt
615 East 7ᵗʰ Street
Wilmington, DE 19801

Re:   *IMO 615 E. 7ᵗʰ Street, Wilmington, DE, 19801,*
*Tax Parcel No. 26-044.10-022*
C.A. No. 2018-0138-SEM

Dear Counsel and Ms. Pratt:

In this partition action, I am tasked with recommending the appropriate division of the net proceeds from the sale of the parties' jointly-owned property. Petitioner seeks 60% of the proceeds plus credit for her payment of taxes, insurance, an appraisal, and business licenses. Respondent seeks a clean 60/40 split or, alternatively, her 40% plus credits for 40% of the prior rental income and 60% of her contributions to the property's maintenance, repairs, and utilities. This is my post-hearing final report.

## I.  BACKGROUND[1]

In 1996, Petitioner Violet M. Smith ("Petitioner") was bequeathed property located at 615 E. Seventh Street, Wilmington, DE 19801 (the "Property").[2] Approximately four (4) years later, Petitioner entered into an agreement with her twin sister, Respondent Violease Pratt ("Respondent") granting Respondent a 40% interest in the Property (the "Agreement").[3] The Agreement recognized the Property was rented and specified (1) all rental proceeds were to go to Petitioner, (2) Petitioner's husband would perform the maintenance on the Property, and (3) maintenance costs and materials would be paid by the parties.[4]

After the Agreement was executed and until this action, Petitioner paid the taxes and insurance for the Property.[5] Petitioner also maintained business licenses

---

[1] The facts in this report reflect my findings based on the record developed at the final hearing on distribution held on May 21, 2019 and in post-hearing submissions. I grant the evidence the weight and credibility I find it deserves. Citations to the hearing transcript are in the form "Tr. #." Petitioner's hearing exhibits are cited as "Ex #." Petitioner raises timeliness objections to the documents submitted by Respondent in her post-hearing submissions. *See* Docket Item ("D.I.") 59. I consider them, nonetheless, and give them the weight and credibility I find they deserve.

[2] Ex. 1.

[3] Ex. 3. The grant was later confirmed by deed in 2003. Ex. 2.

[4] Ex. 3.

[5] Tr. 27:12-20, 31:15-19. Respondent agreed Petitioner paid all of the tax and insurance bills for the Property until her filing of May 24, 2019, where she asserted she paid three City of Wilmington tax bills. D.I. 54. The receipts, however, reflect payment by Petitioner and support that Petitioner paid all such expenses. *Id.*

to rent a portion of the Property and collected 100% of the rental income.[6] After the Agreement was executed, Respondent lived in the Property and managed the rented unit.[7] Respondent contends she paid the utility and maintenance costs while she lived in the Property; Petitioner disagrees and testified that Respondent lived in the Property rent free and did not contribute in any way.[8]

Over the years, the parties' relationship deteriorated and their co-ownership of the Property became unsustainable. Thus, on March 2, 2018, Petitioner filed a petition for partition.[9] Respondent answered and the parties stipulated to a partition by sale, which was approved by then-Master Zurn.[10] After some complications during the sale process,[11] the Property was sold to Respondent and Bobbi Pratt Connor for $100,000.00.[12] The net proceeds of the sale are $89,636.79. A final hearing regarding distribution was held on May 21, 2019, post-hearing briefing was

---

[6] *See* Tr. 31:20-32:16, 48:7-8. For a period of time, Petitioner gave Respondent $200 per month. Tr. 55:8-56:17. Respondent contends the payments represented her 40% share of the rental income. Tr. 64:9-23. Petitioner contends the payments were charity. Tr. 55:8-56:17. I decline to resolve this immaterial factual dispute.

[7] Tr. 51:8-16.

[8] *Compare* D.I. 54 *with* Tr. 52:7-53:24. Despite her failure to introduce any exhibits at the final hearing, Respondent submitted documentation of her expenses in her post-hearing submissions, which I consider in connection with this final report and recommendation. D.I. 54, 56, 58.

[9] D.I. 1.

[10] D.I. 5, 7-8.

[11] *See* D.I. 10-24.

[12] D.I. 27.

ordered, this matter was deemed submitted for decision on June 19, 2019 and I issued

my draft report on September 13, 2019, to which no exceptions were taken.[13]

## II.   ANALYSIS

The parties agree the distribution starts at $53,782.07 (60%) to Petitioner and

$35,854.72 (40%) to Respondent.  Petitioner wants credits applied to her share, and

taken from Respondent's share, for Petitioner's payment of taxes and insurance from

August 28, 2000 through November 5, 2018 and for business licenses and an

appraisal.  Petitioner further seeks the return of certain personal property and shifting

of court costs in her favor.  Respondent seeks a clean 60/40 split.[14]  Alternatively,

Respondent seeks credits for 40% of all rental income and 60% of Respondent's

payment of water bills and for repairs and maintenance.[15]

---

[13] The parties filed additional letters outside the limited scope of the requested post-hearing briefing.  D.I. 57-59.  I have reviewed and consider all such submissions herein.

[14] At the hearing, Respondent voiced an objection to the trustee's fees, which were already deducted from the net proceeds.  *See* Tr. 20:19-22.  Respondent expressly indicated no objection to such fees on November 9, 2018 and cannot reverse course now.  D.I. 29.

[15] Respondent stated numerous times at the hearing that she wanted 40%, full stop.  *See, e.g.*, Tr. 20:16-18, 21:12-15.  But, Respondent changed her tune mid-way through the hearing explaining "if [Petitioner] wants taxes from way back and she wants insurance money from way back," Respondent wanted credits, too.  *See* Tr. 36:23-43:19.

Respondent also makes allegations of attorney misconduct and claims entitlement to burial plots, bank accounts, and furniture located outside the Property.  *See, e.g.*, D.I. 54.  All are outside the scope of the claims and defenses in this action.  *See* Ct. Ch. R. 12(b), Del. Lawyers' R. of Disciplinary Proc. 9.  Respondent also requested in post-hearing submissions that I appoint counsel to represent her in this action.  D.I. 54.  Respondent has had ample time and opportunity to retain counsel and, given the nature and stage of these proceedings, the request should be denied.

### A. Petitioner Should Receive A Credit For The Cost Of The Appraisal.

Before she initiated these proceedings, Petitioner paid $300.00 to have the Property appraised.[16] Petitioner contends the parties agreed to the appraisal and to split the cost 50/50; Respondent disagrees.[17] Petitioner bears the burden of proving the existence of the alleged agreement and has failed to meet that burden.[18] But, Respondent brought the appraisal into these proceedings and cited to, attached, and relied upon it in her efforts to purchase the Property for a higher price.[19] As such, the appraisal benefitted both cotenants and the Property and the cost for it should be covered by both parties in their respective ownership percentages.[20] Because Petitioner already paid for the appraisal in full, she should be given a credit for her 40% overpayment, which would come out of Respondent's share. Thus, the proceeds should be reapportioned as $53,902.07 to Petitioner ($53,782.07+$120.00) and $35,734.72 to Respondent ($35,854.72-$120.00).

---

[16] *See* D.I. 20; Tr. 33:1-9.

[17] Tr. 18:1-3, 32:20-33:9, 46:21-24.

[18] *See Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. 2006), (explaining the burden to prove by the preponderance of the evidence: "1) the intent of the parties to be bound by it, 2) sufficiently definite terms and 3) consideration") (citation omitted), *opinion clarified*, 2006 WL 1510759 (Del. Ch. May 22, 2006).

[19] *See, e.g.*, D.I. 10.

[20] *Cf. Moore v. Davis*, 2011 WL 3890534, at *3 (Del. Ch. Aug. 29, 2011) (declining to split the costs for an appraisal that "did not work a benefit for the co-tenants").

**B. Petitioner Should Receive A Credit For The Taxes And Insurance.**

"Delaware law requires cotenants to share equally the taxes imposed on jointly-owned property and insurance costs associated with the property[.]"[21] Yet, Petitioner contends she paid all of the taxes and insurance from August 28, 2000 through November 5, 2018 and she seeks credits for covering Respondent's portion of those expenses. Respondent disagrees that credits should be applied.

The burden is on Petitioner to prove the extent of her payments and that she—rather than a third party—actually made them.[22] Petitioner introduced certified property tax bills from the City of Wilmington and New Castle County[23] and copies of bills for homeowners insurance for the Property.[24] Based on these records and Petitioner's unrebutted testimony, I find Petitioner paid the taxes and insurance for the Property from August 28, 2000 through November 5, 2018 for a total of $14,158.11.[25]

Respondent argues credits are, nonetheless, inappropriate because (1) the parties agreed Petitioner would pay for the taxes and insurance from the rental

---

[21] *Estate of Weber v. Weber*, 2014 WL 589714, at *5-6 (Del. Ch. Feb. 17, 2014).
[22] *Harrison v. Dixon*, 2015 WL 757819, at *3 (Del. Ch. Feb. 20, 2015).
[23] Ex. 4-5.
[24] Ex. 6.
[25] *See* Tr. 27:12-20, 30:12-24; Exs. 4-6. Respondent's new position that she paid three bills is untimely, contradictory, and prejudicial to Petitioner. D.I. 54. But, even taking it into consideration, I find Petitioner has met her burden to prove Petitioner—not Respondent—paid all of the taxes and insurance.

income and (2) the parties never agreed Respondent had to contribute to the taxes and insurance and Petitioner should not be able to recover without a prior agreement.[26] These arguments are unavailing. Respondent has failed to meet her burden to prove the existence of an agreement regarding the taxes and insurance.[27] Thus, the default under Delaware law—that cotenants share the costs for taxes and insurance—applies.[28] Similarly, because contribution is required under Delaware law, a prior agreement to contribute is not required for Petitioner to prevail.

But because "[t]he Court of Chancery is a court of equity, which at its core, deals in concepts of fairness[,]"[29] I undertake all efforts "to ensure that [Respondent] gets a chance to be heard."[30] Looking past Respondent's contractual framing, Respondent's second argument sounds in laches; i.e., Petitioner has unreasonably

---

[26] Respondent also raised concerns about Petitioner's motives for seeking credits. *See, e.g.*, Tr. 21:17-24. To the extent Respondent's argument sounds in unclean hands, she has failed to prove Petitioner acted inequitably such that relief should be denied. *See NHB Advisors, Inc. v. Monroe Capital LLC*, 2013 WL 6906234, at *2 (Del. Ch. Dec. 27, 2013) ("The doctrine of unclean hands provides that he who comes into equity must come with clean hands; in other words, equitable relief will be denied to a party who has engaged in inequitable conduct related to the matter in which he is seeking such relief.").

[27] *See supra* n.18. *Compare* Tr. 39:16-23 *with* Tr. 53:3-8.

[28] *Cf. Ross Holding & Mgmt. Co. v. Advance Realty Grp., LLC*, 2014 WL 4374261, at *12 (Del. Ch. Sept. 4, 2014) (explaining, in the corporate context, contractual choices override default rules only "where such default rules have been clearly supplanted or modified").

[29] *Kelly v. Fuqi Int'l, Inc.*, 2013 WL 135666, at *6 (Del. Ch. Jan. 2, 2013).

[30] *Id.* (internal citations omitted).

delayed in enforcing her right to contribution.[31]  But laches is an imperfect fit in this *in rem* partition action.  Petitioner's payments were for the benefit of the Property, keeping it in good standing, and "[a] tenant in common who pays the debts or obligations for the benefit of joint property is entitled to contribution from the other tenant in common for his proportionate part of the amount paid."[32]

Thus, 40% of the taxes and insurance paid by Petitioner ($5,663.24) should be credited to Petitioner and taken from Respondent's share of the proceeds.  Further, Petitioner paid the New Castle County taxes through June 30, 2019 and is entitled to reimbursement from Respondent from the date the Property was sold to Respondent (November 5, 2018) until June 30, 2019 in the amount of $325.81.[33] Thus, the proceeds should be reapportioned as $59,891.12 to Petitioner ($53,902.07+$5,989.05) and $29,745.67 to Respondent ($35,734.72-$5,989.05).

---

[31] *See, e.g.*, *Whittington v. Dragon Grp., LLC*, 991 A.2d 1, 7-8 (Del. 2009) ("Laches is an unreasonable delay by a party, without any specific reference to duration, in the enforcement of a right, and resulting in prejudice to the adverse party.") (citation omitted).
[32] *In re Real Estate of Holmes*, 2000 WL 1800127, at *4 (Del. Ch. Nov. 21, 2000), *aff'd*, 787 A.2d 100 (Del. 2001).  *See Haygood v. Parker*, 2013 WL 1805602, at *3-4 (Del. Ch. Apr. 30, 2013) (addressing contribution for sole payments on a mortgage, taxes, and insurance for 20 years); *cf. Pottock v. Mellott*, 22 A.2d 843, 849 (Del. 1941) ("The assessment of the tax is against the land. The tax proceeding is one strictly in rem.").
[33] *See* Ex. 5 (showing an annual fee of $488.72 or, approximately, $40.73 per month).

## C. Petitioner Should Not Receive A Credit For The Cost Of The Business Licenses.

Petitioner seeks a credit for her purchase and maintenance of business licenses for 2012, 2013, 2014, 2015, 2017, and 2018.[34] Petitioner contends the licenses were necessary to rent the Property and the cost should be shared by Respondent.[35] But, because Petitioner received 100% of the rental income (as she was entitled to under the Agreement), I find it would be inequitable to shift 40% of the related cost to Respondent. Stated another way, Petitioner purchased and maintained the licenses in connection with her 100% interest in the rental income and, as such, she should shoulder 100% of the cost of the licenses.

## D. Respondent Should Not Receive A Credit For The Rental Income, Water Bills, Maintenance, Or Repairs.

Respondent seeks credits for 40% of the rental income received by Petitioner and for 60% of the expenses she covered while living at the Property, including the water bills, maintenance, and repairs. Initially, Respondent's claim for 40% of the rental income is barred by the Agreement, whereby the parties agreed Petitioner

---

[34] Ex. 7.
[35] *See* Tr. 31:20-32:3.

would receive 100% of the rental income.[36]  Respondent has never challenged the Agreement and presents no basis for this Court to rewrite it in her favor.[37]

As to Respondent's remaining claims, Delaware law is clear that (1) living expenses of a cotenant in possession of joint property (including repairs, maintenance, and utilities) need not be shared by the other cotenant(s)[38] and (2) "in the absence of an agreement or consent by another cotenant, a cotenant in sole possession is not entitled to contribution from the other cotenants for repairs to the property."[39]  As applied, Respondent is not entitled to credits for the water bills, maintenance, or repairs.  The water bills were an expense Respondent incurred for her benefit while residing in the Property and there is no evidence that the repair or maintenance expenses were incurred with Petitioner's consent.[40]

---

[36] Ex. 3 ("the rent proceeds shall go 100% to Violet Smith").

[37] *See, e.g.*, 60:17-61:12. *See also Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("Parties have a right to enter into good and bad contracts, the law enforces both.").

[38] *See In re Real Estate of Turulski*, 1993 WL 18767, at *5 (Del. Ch. Jan. 21, 1993) (explaining maintenance and utility payments by a cotenant in possession are expenses incurred for the benefit of the cotenant "who would have had to pay them in any event").

[39] *Estate of Weber*, 2014 WL 589714, at *5.  I find these default rules have not been altered by the Agreement, by which the cotenants "remain responsible for the purchase of materials" and "for the costs of materials and capital improvements." Ex. 3 ¶3.  The plain language of these provisions do not supplant—and, rather, confirm—the application of the default rules. *Cf. supra* n.28.

[40] Nor did Respondent prove the repairs qualify as improvements, such that she added reimbursable value to the Property. *See Estate of Weber*, 2014 WL 589714, at *5. *See also Turulski*, 1993 WL 18767, at *5 (denying credits for maintenance and utilities where cotenant lived rent free).

### E. Petitioner's Request For Return Of Personal Property Should Be Denied Without Prejudice.

Petitioner seeks the return of personal items in the Property, including a 40-foot ladder, a kitchen table, a washer and dryer set, and a refrigerator.[41] But the agreement of sale for the Property was to "includ[e] all fixtures, appliances, and personal property currently in or on the property as of August 21, 2018."[42] I cannot recommend that Petitioner's request for the return of personal property be granted on this record and, instead, recommend the request be denied without prejudice.

### F. Petitioner's Request For Costs Should Be Briefed.

Petitioner seeks her costs incurred in this action. Court of Chancery Rule 54(d) provides: "Except when express provision therefor is made either in a statute or in these Rules, costs shall be allowed as of course to the prevailing party unless the Court otherwise directs." Delaware's partition statute provides: "The costs of a proceeding for partition shall be taxed and allowed by the Court and paid from the proceeds of sale or by the parties according to their respective interests in the premises, in the manner as the Court orders."[43] Whether this statutory language is

---

[41] *See* Ex. 10; Tr. 33:10-34:11. Respondent has not challenged the request; perhaps the parties can resolve this issue without court involvement.

[42] D.I. 24, Ex. A.

[43] 25 *Del. C.* § 735. *See also Moore v. Davis*, 2011 WL 3890534, at *1 n.1 ("Court costs in connection with partition actions are routinely assessed against all co-tenants[.]").

an "express provision" that trumps Rule 54(d) and how Petitioner meets the "prevailing party" standard should be briefed. A separate order will be issued.

## III. CONCLUSION

For the foregoing reasons, I recommend the proceeds be distributed $59,891.12 to Petitioner and $29,745.67 to Respondent, representing an initial split of 60% to Petitioner and 40% to Respondent and credits to Petitioner (and from Respondent) for Petitioner's payment of the appraisal fee, taxes, and insurance. I recommend the remaining requested credits be denied. I further recommend that the request for return of personal property be denied without prejudice. Shifting of costs will be determined by separate order.

This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery