TOWNSHIP OF BRICK, A MUNICIPAL CORPORATION OF THE COUNTY OF OCEAN AND STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. BLOCK 48–7, LOTS 34, 35, 36 KENLAV C/O PARTY TIME INN, AND OTHER LANDS, DEFENDANTS, v. ROBERT V. PASCHON AND BYRON KOTZAS, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 2, 1985—Decided June 19, 1985.

Before Judges PRESSLER, BRODY and COHEN.

*Frederic K. Becker,* argued the cause for appellants (*Wilentz, Goldman & Spitzer,* attorneys).

*Charles E. Starkey,* argued the cause for respondent (*Starkey, Kelly, Blaney & White,* attorneys).

The opinion of the court was delivered by

RICHARD S. COHEN, J.A.D.

This is an *in rem* tax foreclosure suit by plaintiff Township of Brick against vacant property assessed to Robert V. Paschon, a local attorney, and Byron Kotzas, a local real estate entrepreneur. Plaintiff served the foreclosure complaint in the manner required by *N.J.S.A.* 54:5–104.42 and *R.* 4:64–7, by publication, posting in the office of the tax collector and three other conspicuous places in the municipality, and mailing by certified or registered mail to the owners at their "last known

address as it appears on the last municipal tax duplicate." *R.*
4:64–7(c).[1]  Their address appeared on the municipal tax dupli-
cate as 1277 Hooper Avenue, Toms River, the former location
of Paschon's law office.

Before the foreclosure complaint was filed and a copy mailed
to his law office, Paschon moved his office from 1277 Hooper
Avenue, Toms River, to 1005 Hooper Avenue, Toms River.  He
did not, however, take steps to correct the address on the tax
duplicate.  The mailed complaint was not forwarded by the
postal authorities, but was returned with a stamp on the
envelope which said:

Returned to Sender
Unable to forward
Undeliverable as addressed
Forwarding order expired

Plaintiff took no further steps to serve the complaint on
Paschon and Kotzas after the mailed notice was returned.  It
ultimately sought and obtained a default judgment.  Almost a
year later, Paschon and Kotzas moved to be relieved from the
judgment.  *R.* 4:50–1.  The application was denied, and they
appealed.  Their new counsel moved before this court to supple-
ment the record.  We denied the motion, but remanded to
permit the motion to be made in the trial court and retained
jurisdiction.  The motion was granted there, and the record was
thus enlarged.  The court reconsidered the merits on the basis
of the enlarged record and again denied relief.  The matter has
been returned to this court.  Plaintiff has not cross-appealed
from the trial court's determination to permit enlargement of
the record.  We now reverse and remand to the trial court.

At one time, *in rem* tax foreclosure suits could proceed with
notice to property owners limited to publication and posting.
*Newark v. Yeskel,* 5 *N.J.* 313 (1950).  In 1950, the United States
Supreme Court decided *Mullane v. Central Hanover B. & T.*

---

[1] Personal service in the manner provided by *R.* 4:4–4(a) is a permitted
alternative to mailing.  *R.* 4:64–7(c).

*Co.*, 339 *U.S.* 306, 70 *S.Ct.* 652, 94 *L.Ed.* 865. It held constitutionally insufficient giving notice to beneficiaries solely by publication of a trustee's settlement of accounts. The Court said:

> ... process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. 339 *U.S.* at 314–315, 70 *S.Ct.* at 657.

In *Newark v. Yeskel, supra,* New Jersey's Supreme Court held *Mullane* inapplicable to *in rem* tax foreclosure proceedings. But, then came *New York v. New York, N.H. & H.R. Co.*, 344 *U.S.* 293, 73 *S.Ct.* 299, 97 *L.Ed.* 333 (1953), holding insufficient the giving of notice to known creditors by publication of a bankruptcy reorganization; *Nelson v. New York*, 352 *U.S.* 103, 77 *S.Ct.* 195, 1 *L.Ed.*2d 171 (1956), in which mailed notice was assumed necessary in a tax foreclosure proceeding; and *Schroeder v. New York*, 371 *U.S.* 208, 83 *S.Ct.* 279, 9 *L.Ed.*2d 255 (1962), holding that publication and posting did not give sufficient notice to owners in a condemnation proceeding. The expanding application of *Mullane* convinced the New Jersey Supreme Court that *Newark v. Yeskel* had been incorrectly decided. In *Township of Montville v. Block 69, Lot 10,* 74 *N.J.* 1 (1977), it held that an owner's right of redemption could not be validly cut off by a tax foreclosure suit unless personal service or mailed notice were added to the statutory requirements of publication and posting. *R.* 4:64–7 and *N.J.S.A.* 54:5–104.42 were later amended to accommodate the *Montville* decision.

There is no question but that plaintiff satisfied the *Montville* requirement of mailing notice. It is argued, however, that Paschon and Kotzas were nevertheless denied due process of law. They submit that the local officials who conducted the foreclosure suit knew of their change of address, knew where they could be reached and yet failed to take the simple steps necessary to give them notice of the suit.

Detailed recital of the proofs before the trial court is unnecessary. Suffice it to say that there was evidence that plaintiff's

counsel handled this matter in a routine fashion and did not give it special attention, even after the return of the mailed notice. The foreclosure complaint involved approximately 100 parcels of property. The caption is seven pages long. Plaintiff's counsel explained in an affidavit that his firm customarily deals with tax foreclosures in groups of 100 parcels. The pleadings, publications and mailings are handled by a secretary who acts under general instructions from counsel. All pleadings are reviewed by counsel for legal form. He did not know, however,

> that the address to which notice was sent to Mesrs. Paschon and Kotzas was incorrect. [He] did not periodically examine any of the envelopes which were returned as not being deliverable.

Counsel's affidavit of service shows that he mailed notice both by certified and ordinary mail. Seventy-three notices were sent by certified mail to owners at twenty-seven different post offices. Forty-nine were received by the addressees. Twenty-four, including the one sent to Paschon and Kotzas, were returned. The affidavit does not say whether any of the notices mailed by regular mail were returned.

There was evidence before the trial court that information was available in the Lawyer's Diary and Manual or the telephone book to ascertain where Paschon and Kotzas could have been found,[2] that counsel's office had communicated with Paschon by mail at his new office address in a recent unrelated legal matter and that Paschon had previously written to the plaintiff's tax office on stationery that bore his new address. There was a disputed allegation that, before the foreclosure suit, plaintiff's counsel had represented Kotzas in an unrelated matter.

On the other hand, there was evidence that Paschon and Kotzas paid taxes on this property only when no other option remained. In 1979, they redeemed tax sale certificates generat-

---

[2]The 1982 Lawyer's Diary and Manual lists Paschon's office address as 1005 Hooper Avenue. The 1981 edition had it as 1277.

ed by their failure to pay 1975, 1976, 1977 and 1978 taxes. The present foreclosure suit arose out of their failure to pay for 1979 (second half), 1980, 1981 and 1982. They had ordered tax searches in 1980 on two of the three lots. At the time of foreclosure, the amount required to redeem was some $54,000.

There is nothing illegal about the means Paschon and Kotzas chose to deal with their property taxes. But, they knew or should have known that their change of address would eventually cut off transmittal of tax bills and related notices. In 1982, they should have been alerted either by receiving forwarded tax bills addressed to the former location or by not receiving tax bills at all. After September 1982, when service by mail was attempted, and December 1983, when they made their motion for relief, they must not have received any tax bill from plaintiff. They should also have recognized that municipal officials do not peruse the tax duplicates to see if people they know have supplied their correct addresses. Moreover, the correctness of owners' addresses is not ascertainable on mere inspection. The addresses may be those of accountants, attorneys, trustees, banks or others entrusted with bill-paying functions. Thus, there is ordinarily no reason why an address given by the owner of vacant land should be the subject of suspicious questioning at the municipal tax offices. Of the twenty-seven notices returned in the present case, fifteen were from post offices outside of Brick Township, five outside of New Jersey. The United States Supreme Court said in *Mullane* that "impractical and extended searches are not required in the name of due process." 339 *U.S.* at 317–318, 70 *S.Ct.* at 659, 94 *L.Ed.* at 875.

Property owners' addresses are supplied to tax assessors, who are not expected to ferret them out. A new owner may present the deed to the assessor. *N.J.S.A.* 54:4–29. If that is not done, the register of deeds or county clerk must ascertain and mark on the deed the new owner's post office address. *N.J.S.A.* 54:4–30. The register or county clerk may not record any deed unless the new owner's address appears on it, *N.J.*

S.A. 54:4–32, and must send to the assessor an abstract of the recorded deed containing the address. *N.J.S.A.* 54:4–31. The names and addresses that result from this process are used for mailing of tax bills and for the tax duplicate. Those are the names and addresses which the municipality employs in serving notice of tax foreclosure suits. *R.* 4:64–7(c). If an owner wants the address on the tax duplicate changed, it is up to the owner to notify the assessor. If that is not done, the tax obligation is unaffected, and the owner is dutybound to ascertain the amount owed. *N.J.S.A.* 54:4–64.

■ Due process does not require tax collectors, municipalities and their staffs to examine the tax rolls to search for outdated or incorrect addresses supplied by property owners, or to communicate with property owners to ascertain whether their addresses remain correct. A local professional or business person can not expect more. It is not controlling that the municipality or counsel may have unrelated communication with the taxpayer at an address different from that appearing on the tax rolls.

The New Jersey Supreme Court has clearly ruled that municipalities are not constitutionally required to search out taxpayers in foreclosure suits to see if they have furnished up-to-date addresses. *Atlantic City v. Block C–11, Lot 11,* 74 *N.J.* 34 (1977), a companion case to *Montville,* was a tax foreclosure suit involving property bought in 1938 by a corporation owned by Sylvan Schoenthal. The owner was listed as the corporation with its address at the premises. Since 1960, when the principals of the corporation were divorced and the wife, Rose Schoenthal, received the property as part of the divorce proceedings, she dealt with the property as her own. Even though the name and address on the tax duplicate was never changed, she applied for a tax deduction in her own name in the early 1960's and received a refund for a tax overpayment in the same years. In 1972, she obtained a demolition permit and tore down

the building on the property. Subsequently, she applied for and received a further tax reduction. She also contended that the city customarily sent two sets of tax bills, one to the corporation at its listed address and the other addressed to her home. The Supreme Court held that, in these circumstances, due process did not require the city to give Mrs. Schoenthal notice of the tax foreclosure suit. Such a requirement, reasoned the Court, would go beyond *Mullane* and place on the city the affirmative duty of ascertaining whether the name and address on its tax rolls are correct. Compare *Mennonite Board of Missions v. Adams*, 462 *U.S.* 791, 103 *S.Ct.* 2706, 77 *L.Ed.*2d 180 (1983) where mortgagees whose liens were publicly recorded but did not appear on the tax rolls were held entitled to personal service or mailed notice. *But see N.J.S.A.* 54:5–104.48.

Paschon and Kotzas question *Atlantic City* on the basis of two United States Supreme Court cases, which we find to be distinguishable. The first is *Robinson v. Hanrahan*, 409 *U.S.* 38, 93 *S.Ct.* 30, 34 *L.Ed.*2d 47 (1972). There, the State took judicial proceedings to forfeit a motor vehicle by reason of its involvement in criminal activity. The statute required notice to the owner to be mailed to the address shown on the vehicle registration. The mailed notice failed to reach the owner because he was in jail awaiting trial on the charges out of which the forfeiture action arose. The Court held that the State could not validly mail notice of the forfeiture to an owner at an address from which it knew he was absent because it was holding him in jail. The present case differs from *Robinson* in the important respect that the failure of the mail to reach Paschon and Kotzas was not due to plaintiff's action but, rather, their own failure to make themselves accessible to mail service.

The other United States Supreme Court case is *Covey v. Somers*, 351 *U.S.* 141, 76 *S.Ct.* 724, 100 *L.Ed.* 1021 (1956).

There, mail service was made upon an owner in a tax fore-
closure action who the town officials knew was incompetent.
Because of the officials' knowledge that such service would be
unavailing, the Court held that due process was denied to the
incompetent.

■ Actual knowledge of facts making receipt of mailed
notice unlikely is a matter that was not fully explored in the
present case.  For that reason, we must remand for a full
hearing on that matter.  Although plaintiff and its counsel had
no duty to investigate Paschon's and Kotzas's address on the
tax rolls, either initially or after return of the undelivered
mailing, it is something else altogether if someone involved
ignored conscious awareness that the address was outdated or
that the mailing was returned and that Paschon and Kotzas
were available for service.

■ Relief from the judgment should be granted only if
anyone actively involved for plaintiff in the preparation and
prosecution of the foreclosure suit had actually recognized
before the default judgment from any information, including
the return of the mailed notice, that the address carried on the
tax duplicate for Paschon and Kotzas was inaccurate or stale
and that, therefore, notice mailed to that address would proba-
bly not be delivered, and that another, known or readily avail-
able address could be used to notify them of the foreclosure
suit.

There were insufficient facts before the trial court and, thus,
to resolve the issue, there must be a plenary hearing.  The
burden to proceed and to persuade belongs to the defaulting
taxpayers.

The order denying relief from the judgment is reversed and
remanded for proceedings consistent herewith.  We do not
retain jurisdiction.