### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2275-19

CITY OF NEWARK, COUNTY
OF ESSEX, a Municipal
Corporation of the State of
New Jersey,

     Plaintiff-Respondent,

v.

CLAIM: 99
BLOCK/LOT: 1818/13
ADDRESS: 237 S. 11TH ST.
ASS'D OWNER(S): IMJ1, LLC,

CLAIM: 111
BLOCK/LOT: 1876/44
ADDRESS: 66 4TH ST.
ASS'D OWNER(S): IMJ1, LLC,

CLAIM: 113
BLOCK/LOT: 1897/11
ADDRESS: 9 S. 12TH ST.
ASS'D OWNER(S): IMJ1, LLC,

     Defendant-Appellant.

_____

Argued March 10, 2021 – Decided June 4, 2021

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-003634-19.

Adam S. Kessler argued the cause for appellant (Kessler Law, LLC, attorneys; Adam S. Kessler, on the briefs).

Ariadna Peguero, Assistant Corporation Counsel, argued the cause for respondent (Kenyatta K. Stewart, Corporation Counsel, attorney; Ariadna Peguero, on the brief).

PER CURIAM

In this in rem tax foreclosure, IMJ1, LLC, former assessed owner of the three Newark properties listed in the caption, appeals from an order denying its Rule 4:50 motion to vacate the default judgment vesting title to the properties in plaintiff City of Newark. Because we agree with the chancery judge that Newark properly served the notice of foreclosure on IMJ1 in accordance with Rule 4:64-7, and IMJ1 failed to carry its burden on the motion to justify relief from the judgment, we affirm.

The material facts are few and undisputed. In January 2017, IMJ1 purchased the three properties, which its counsel described to the trial judge as "abandoned," and thereafter failed to pay any property taxes. Newark auctioned

2

A-2275-19

tax sale certificates in December 2017, and was itself the purchaser at the sale in the absence of other bids.

In February 2019, the City filed a complaint to foreclose the certificates pursuant to the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 to -104.75, and served notice in accordance with Rule 4:64-7(c), by publishing it in the Star Ledger, posting it in the offices of the tax collector, the county clerk, and the City clerk, as well as the Newark public library, the Newark Municipal Court and on pubic bulletin boards at three health and community wellness centers in the City, and sending it by regular and certified mail to IMJ1 at its address on the last municipal tax duplicate, 16192 Coastal Highway, Lewes, Delaware 19958, the same address listed in IMJ1's deed to the properties. The City also served a copy of the notice by regular and certified mail on IMJ1's registered agent, Registered Agents, Inc., at its address in Marlton, to IMJ1's former counsel in New York, to each of the properties, and to IMJ1's "main business address" in Brooklyn as listed in its certificate of registration on file with the Department of Treasury. IMJ1 failed to answer, and default judgment was entered. The City recorded the judgment on July 8, 2019.

Jakov Telyas, IMJ1's "sole member and authorized representative," claims in a certification filed in the trial court that he learned of the judgment the

A-2275-19

following October after he was under contract to sell the properties. When the City refused his request to redeem the properties, he filed a motion to vacate the default judgment. Telyas acknowledged the City served IMJ1's registered agent, but claimed the agent never forwarded the documents to him. He also claimed the notice "was never received by [IMJ1] at the main business address" in Brooklyn.

IMJ1's counsel argued it was entitled to have the judgment vacated under Rule 4:50-1(a) due to Telyas' excusable neglect, Rule 4:50-1(d) because the judgment was void based on improper service, and Rule 4:50-1(f) because IMJ1 had been denied due process based on the City's failure to serve the notice at its Brooklyn business address. Counsel also argued the City managed to serve IMJ1 in Brooklyn with "a municipal property maintenance complaint, . . . several months after final judgment by default had been entered." He claimed the City acted in bad faith by negotiating and accepting a reduced fine for the violations in municipal court without ever advising IMJ1 it no longer owned the property.[1] Telyas claimed that had IMJ1 "been properly noticed of the

---

[1] We cannot tell from the few pages of the appendix on this issue whether the violations covered a period when IMJ1 was the owner of the properties. If not, it may have a basis to reopen that judgment, but it does not support reopening this one.

4

foreclosure action," he would have paid the outstanding taxes and redeemed the properties.

The City countered that it served notice of the foreclosure on IMJ1 by regular and certified mail at its address listed on the municipal tax duplicate and on its registered agent, both of which were received in accordance with the signed conformations of delivery filed with the court. Although acknowledging the City never received confirmation of delivery of the certified mail it sent to IMJ1's Brooklyn business address, it noted the regular mail was never returned.

The chancery judge denied the motion, finding IMJ1 was properly served. The judge noted a limited liability company is required to have an agent for service of process, and IMJ1 was required to provide the tax assessor with its "most recent address." The City served IMJ1 at the address it provided to the tax assessor as well as its registered agent and received signed acknowledgments of service on both. As the judge stated, "if . . . the owner of the three properties had some failure between itself and these registered agents, that's not the City's responsibility to ferret out."[2] The judge also found that no one being able to

---

[2] IMJ1's counsel argued before the trial court that "even though [notice of the foreclosure] was signed for," IMJ1 never received notice because "[a]n attorney set up the certification of formation for my client, but he never paid these companies." Counsel claimed "[n]obody ever paid these companies. So I called

A-2275-19

receive process at IMJ1's Brooklyn "office at 6:30 in the morning to sign for a certified mail receipt for one of the notices that was apparently attempted"[3] did not establish exceptional circumstances so as to warrant relief from the judgment given defendant was properly served at the address it provided and via its registered agent.

IMJ1 appeals reprising the arguments it made to the trial court, none of which we find has sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). IMJ1 does not deny service was properly made at the

them and I said, 'What happened here? I don't understand.' And they said, 'You're not in the system.'"

[3] IMJ1's counsel argued to the trial court, and maintains here, that the postal service attempted delivery of the notice at defendant's business address in Brooklyn at 6:17 a.m., before anyone was present, and thereafter "the delivery got lost in the system, and it was never actually delivered" to IMJ1. Leaving aside that the USPS tracking document in IMJ1's appendix on which it relies for that argument does not appear, at least as far as we can tell, to have been the subject of a certification on personal knowledge in accord with Rule 1:6-6, it also doesn't appear to support defendant's argument. The document states the item departed the USPS Brooklyn Distribution Center at 4:38 a.m. on March 10, 2019, was "in transit to next facility" on March 11, 2019, "arrived at unit Brooklyn, NY 11211," at 6:17a.m., and was "out for delivery Brooklyn, NY 11249" at 10:11 a.m. As IMJ1 claims its Brooklyn business address is located on 4th Street in the 11249 zip code area, the document does not support that delivery was attempted at 6:17 a.m. as IMJ1 asserts. We also note, however, that the tracking number on the document does not appear to match any of those on the postal services' print out of the certified mailings made in connection with this action in the City's appendix.

6

address it provided on the municipal tax duplicate and on the registered agent it identified in its certificate of registration. As Judge Cohen explained more than thirty-five years ago, "municipalities are not constitutionally required to search out taxpayers in foreclosure suits to see if they have furnished up-to-date addresses." Brick Twp. v. Block 48-7, Lots 34, 35, 36, 202 N.J. Super. 246, 252 (App. Div. 1985). It is immaterial that the City has used a different address to communicate with the property owner in another context. Ibid. "Due process does not require tax collectors, municipalities and their staffs to examine the tax rolls to search for outdated or incorrect addresses supplied by property owners, or to communicate with property owners to ascertain whether their addresses remain correct." Ibid.

We reject IMJ1's claim that the City has received a "windfall" at its expense. The City and its residents depend on property tax revenues for the City's operations and its residents' welfare. See Route 88 Office Assoc. Ltd. v. Twp. of Brick, 13 N.J. Tax 14, 20 (Tax 1992) (noting "[a] municipality's revenues depend on local property taxes . . . ."). Defendant owned these properties for two-and-a-half years, incurred code violations for failure to maintain them and never paid property taxes over the course of eight quarters on any of them. It apparently also never paid the entities it retained to act as its

registered agents.  While IMJ1 is, of course, free to conduct its business affairs as it sees fit, we find no basis to relieve it of the consequences of its decision to shirk its obligations to the City in light of the City's punctilious adherence to the Rules.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2275-19